STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael J. WALLERMAN, Defendant-Appellant.†

Court of Appeals

No. 95–1950–CR. *Submitted on briefs May 14, 1996.—Decided June 26, 1996.*

(Also reported in 552 N.W.2d 128.)

†Petition to review granted.

158

On behalf of the defendant-appellant, the cause was submitted on the brief of *Glen B. Kulkoski* of *Carr, Kulkoski & Stuller, S.C.* of New Berlin.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J.   Michael J. Wallerman appeals his convictions of attempted homicide, attempted sexual assault and armed burglary following a jury trial. He challenges the trial court's decision to admit "other acts" evidence, specifically, his sexual assault of a different woman which assault was otherwise unrelated to the current charges. While the State used this "other acts" evidence to prove Wallerman's motive and intent, Wallerman contends that it was nonetheless irrelevant because the sole issue at trial was identification. We reject Wallerman's contention because our review of the record convinces us that he never affirmatively conceded the issue of the attacker's motive and intent.

The facts supporting the jury's verdict are as follows.[1] On the evening of June 10, 1994, Wallerman met

---

[1] As already noted, Wallerman is appealing his convictions of attempted homicide, attempted sexual assault and armed burglary. *See* §§ 940.01(1), 940.225(1)(b) and 943.10(2), STATS. The jury also found Wallerman guilty of recklessly endangering

with some friends at a tavern in Mukwonago. Wallerman became intoxicated. While he was at the bar, he made several comments to his friends involving some women at the tavern and his sexual desires.

At about 11:00 p.m., Wallerman left the bar with his friends and went to one of their homes in East Troy. About a half hour later, Wallerman told his friends that he was headed home.

Wallerman, however, first drove to Carolyn K.'s house. He knew Carolyn's sister from high school, but the sister was not home. Wallerman nonetheless spoke to Carolyn for some time at the front door. But when Wallerman attempted to reach out and kiss Carolyn, she told him "no" and tried to push him away. Wallerman still managed to grab at her breast before leaving.[2]

After Wallerman left Carolyn, he drove to the house of another friend, Gary G. He rang the doorbell a few times until Gary's mother, Deborah, eventually came to the door. He then forced his way into the house and knocked Deborah down. Wallerman pulled out a knife, waved it in Deborah's face and tried to stab her with it. Deborah, however, was able to fend Wallerman off.

Their scuffle awoke Deborah's husband and her other son, Sean, who both came downstairs. Wallerman ran away and the two men chased after him. Although Sean caught Wallerman, he received cuts on his hand and knee from Wallerman's knife. The local police subsequently took Wallerman into custody.

---

safety and fourth-degree sexual assault. *See* §§ 941.30 and 940.225(3m), STATS. However, he does not appeal the verdicts on the latter two charges.

[2] Wallerman's incident with Carolyn formed the basis for the fourth-degree sexual assault conviction.

In addition to the testimony from Wallerman's friends who were with him earlier that evening and Carolyn, Deborah and Sean, the State called Kristin K. She testified that Wallerman had assaulted her about four years earlier. On February 6, 1990, Kristin was walking down a road late in the evening and Wallerman grabbed her from behind. He pulled her into a backyard and groped at her breasts and genitals. Wallerman also flashed a knife. Kristin was nonetheless able to fight Wallerman off. She could identify Wallerman because they both worked at a local grocery store.

This appeal centers on the admission of Kristin's testimony and thus pertains to the trial court's discretionary control over the admission of evidence. We may not reverse unless we find that the trial court applied the wrong legal standard or applied the legal standard to the facts in an illogical manner. *See State v. Rogers*, 196 Wis. 2d 817, 829, 539 N.W.2d 897, 902 (Ct. App. 1995).

Wallerman begins by focusing on the rationale that the trial court gave during pretrial proceedings when it decided to admit the "other acts" evidence. The court accepted the State's claim that Wallerman's attack on Kristin was admissible because it revealed Wallerman's reason and purpose for attacking Deborah: a means by which to get sexual gratification. *See* § 904.04(2), STATS.

However, Wallerman argues that "as the case developed and concluded, motive and intent were not the affirmatively contested issues of the defense." Instead, Wallerman contends that he only pursued the theory that Deborah had identified the wrong assailant. Whatever rationale supported the admission of the

162

"other acts" evidence before trial, Wallerman contends that the trial court erred when it later permitted the State to use this evidence because it was no longer relevant to the issues that the jury actually needed to resolve.

Alternatively, Wallerman adds that the "other acts" evidence was unfairly prejudicial. Here, he argues that as he switched to the misidentification strategy, the State's need to introduce proof on motive and intent became less significant. Moreover, as Wallerman turned the trial to the issue of identification, the State's "other acts" evidence fulfilled the improper purpose of suggesting to the jury that Wallerman was the assailant simply because he had a propensity to commit this type of crime.

In response, the State first argues that regardless of the defendant's choice of trial strategy, it may always introduce "other acts" evidence about the defendant's motive and intent. The State points to the following excerpt from *State v. Plymesser*, 172 Wis. 2d 583, 493 N.W.2d 367 (1992), to support this claim:

> The state must prove all the elements of a crime beyond a reasonable doubt, even if the defendant does not dispute all of the elements. Motive is relevant to the "purpose" element in this case. *Evidence relevant to motive is therefore admissible, whether or not [the] defendant disputes motive.*

*Id.* at 594-95, 493 N.W.2d at 372 (citation omitted)(emphasis added). The State claims that the plain language of this passage established a rule allowing the State to always introduce "other acts" evidence relevant to motive and intent even when the defendant does not dispute these issues. Accordingly, the State argues that this evidence revealing Wallerman's

motive and intent was admissible regardless of how he defended the charges.

While we agree that the face of the *Plymesser* decision supports the State's interpretation, we conclude that the State has taken this language out of its context. Our analysis of the facts and reasoning in *Plymesser* reveals that there are limitations on the State's ability to admit "other acts" evidence revealing the defendant's motive and intent; therefore, this language from *Plymesser* does not control the outcome of this case.

Of course, this case and *Plymesser* share some similarities. Like Wallerman, Plymesser was also accused of sexual assault and challenged the State's use of "other acts" evidence as proof of motive and intent. Plymesser was accused of assaulting a young girl while the two were driving to a Christmas party. The State sought to introduce Plymesser's twelve-year-old conviction for assaulting another girl along with the factual details; it believed that this "other acts" evidence showed Plymesser's purpose, motive and intent on the current charges. *See id.* at 586, 493 N.W.2d at 369.

But Plymesser chose to defend his charges in a different manner than Wallerman and that is where the similarities between the cases diverge. Unlike Wallerman, Plymesser did not claim that the victim wrongly identified him. Rather, Plymesser acknowledged that he drove the girl in his car but denied that the assault ever occurred. Since Plymesser did not directly challenge the State's claim that he intended to assault the girl, he argued that the State's "other acts" evidence showing his motive and intent was not relevant to the trial issues. *See id.* at 594, 493 N.W.2d at 372.

164

The supreme court, however, upheld the decision to admit the evidence stating the rule which the State now wants to use against Wallerman: "Evidence relevant to motive is therefore admissible, whether or not [the] defendant disputes motive." *See id.* at 594-95, 493 N.W.2d at 372. Nonetheless, the State's attempt to apply this rule does not mesh with its stated rationale. The lengthier passage we cited above shows that the rule is designed to ensure that the State meets its fundamental burden of proving all the elements of a crime beyond a reasonable doubt. *See id.* Thus, even though Plymesser's general denial meant that he never raised a direct challenge to the State's evidence on his motive and intent, the State still needed to prove this element as part of its case against him. Otherwise, there would be a complete absence of evidence showing his *mens rea* and the verdict would have been flawed. *See id.; see also United States v. Brown*, 34 F.3d 569, 573 (7th Cir. 1994) ("a defendant cannot keep ['other acts'] evidence out of his case by denying all charges."), *cert. denied*, 115 S. Ct. 1136 (1995).

But since Wallerman claims to have conceded that the State established that Deborah was attacked and that whoever was responsible did so to obtain sexual gratification, he submits that the State had no need to spend time introducing evidence on these issues to meet its burden of proof. In essence, Wallerman argues that the trial court should have excluded the State's "other acts" evidence because it was unnecessary and a waste of time. *See* § 904.03, STATS. In fact, while the *Plymesser* court seemed most concerned about the possible prejudicial effect of the State's "other acts" evidence, *see* 172 Wis. 2d at 595, 493 N.W.2d at 373, it did write a general rule which appears to apply in this case: "If the other acts evidence is offered for a proper

purpose, the evidence is subject only to the general strictures limiting admissibility such as secs. 904.02 and 904.03." *Id.* at 592, 493 N.W.2d at 371 (quoted source omitted). Thus, we reject the State's argument that *Plymesser* established a per se rule which enables it to always submit "other acts" evidence on motive and intent because such evidence is subject to "general strictures" against using this evidence when the defendant's concession or offer to stipulate provides a more direct source of proof.

The State, however, raises an alternative argument to support its use of this "other acts" evidence against Wallerman. It contends that Wallerman never explicitly offered to enter into a stipulation or make a concession regarding the motive and intent elements of the charges. The State argues, therefore, that its "other acts" evidence was necessary because Wallerman never offered any concession which the State could place before the jury as proof of these elements beyond a reasonable doubt.

Furthermore, the State notes that some federal courts have required the defendant to meet stringent requirements before a trial court may entertain the question of whether the defendant's concession should be relied on to effectively bar the government from introducing motive and intent evidence.[3] It specifically points to the First Circuit Court of Appeals which has adopted the following methodology:

---

[3] The federal rule on "other acts" evidence, FED. R. EVID. 404 (b), and the Wisconsin rule, § 904.04(2), STATS., are virtually identical. *State v. McAllister*, 153 Wis. 2d 523, 527, 451 N.W.2d 764, 766 (Ct. App. 1989). Hence, the federal decisions are persuasive authority. *See id.* at 527 n.2, 451 N.W.2d at 766.

> To prevent the admission of bad acts evidence, a defendant's offer to concede knowledge and/or intent issues must do two things. First, the offer must express a clear and unequivocal *intention* to remove the issues such that, in effect if not in form, it constitutes an offer to stipulate. Second, notwithstanding the sincerity of the defendant's offer, the concession must cover the necessary substantive ground to remove the issues from the case.

*United States v. Garcia*, 983 F.2d 1160, 1174 (1st Cir. 1993); *see also United States v. Thomas*, 58 F.3d 1318, 1321-22 (8th Cir. 1995); *United States v. Figueroa*, 618 F.2d 934, 941-42 (2d Cir. 1980).

We are persuaded by *Garcia* and other federal courts of appeals and conclude that we should set forth a methodology for Wisconsin. When the defendant is faced with "other acts" evidence but wishes to concede an element of the crime for which the evidence is being offered, the court needs to ensure that the record contains conclusive evidence which the jury may rely on to find guilt before it relieves the State of the duty to prove that element.

We therefore set out the following guidelines. First, the trial court should carefully explore the breadth of the defendant's offer. The court needs to determine exactly what the defendant is conceding to.

Next, the trial court needs to assess the State's evidence and determine whether the "other acts" evidence would still be necessary even with the defendant's concession. For example, the State's evidence may no longer be needed to prove those elements which the defendant is willing to concede, but it may nevertheless be relevant to the other elements of the crime that the defendant still contests.

167

Third, the trial court should personally voir dire the lawyers and the defendant to ensure that they each understand the effects of the concession. *Cf. Kemp v. State*, 61 Wis. 2d 125, 129-30, 211 N.W.2d 793, 795 (1973) (describing what the trial court should consider before conducting trial based entirely on defendant's stipulations). The trial court needs to ensure that the defendant understands that the State will rely upon the concession to prove its case and will use it when arguing to the jury, and similarly, that the court will instruct the jury about the concession. As important, the defendant must know that he or she has waived the right to produce evidence and make arguments on the element. *Cf. id.*

Fourth and finally, just like questions involving the admissibility of "other acts" evidence, these concessions or stipulations should be addressed pretrial if possible. Such practice will save resources for the State, which otherwise would have to seek out the factual details of the "other acts" evidence; for the defendant, who would have to prepare rebuttal; and for the trial court, which would have to gauge whether the evidence is admissible.[4]

We now return to the case at hand. Although Wallerman did not have the benefit of this decision which would have informed him that he needed to place his concession on the record, we can still competently test whether he made a concession in this case by reviewing

---

[4] Because the underlying issue for the trial court is whether the defendant's concession removes the State's need to introduce motive and intent evidence, the decision to allow such concessions is left to the trial court's general discretionary authority over the admission of evidence. *See State v. Rogers*, 196 Wis. 2d 817, 829, 539 N.W.2d 897, 902 (Ct. App. 1995).

the trial transcripts themselves and examining the nature of the evidence he presented and his rebuttal to the State's case.

First, our review of the trial transcript does not provide any direct or inferential indication that Wallerman willingly conceded the issue of whether Deborah's assailant intended to harm her. Second, while his questioning of Deborah only pertained to whether she could identify him as the attacker, the remaining parts of the record demonstrate that Wallerman attacked the State's evidence revealing that he intended to obtain sexual gratification.

Indeed, Wallerman's claim that he did not enter Deborah's house with designs to gain sexual gratification from her was first unveiled during opening arguments. There his counsel attempted to explain why the State was going to use Kristin's testimony about Wallerman's previous attack in this manner:

> [T]he State is putting that in his [sic] because they can't prove on the basis of what happened in 1994 that Mr. Wallerman intended to sexually assault Deborah G., they can't prove it. He never said anything to her, he never reached for her, he never grabbed her in a private place. He never did anything that would indicate an intent to commit a sexual assault.

Thus, from the beginning of trial, Wallerman signaled to the jury that he wished to contest the State's claim that he intended to assault Deborah during the attack.

In addition to the road map that Wallerman's counsel laid out during opening arguments, the record also discloses that defense counsel pursued the "no intent" theory through his cross-examination of the State's other witnesses. The State, for example, offered

169

testimony from one of Wallerman's friends who was with him at the tavern the evening of the attack. This witness explained how Wallerman had suggested in the past that he thought Deborah G. was attractive and had made various sexually-related comments that evening about women at the bar. The State contended that this showed what Wallerman was after when he attacked Deborah that evening.

During cross-examination, however, defense counsel challenged what these statements actually revealed, inquiring if Wallerman's comments were unusual given the context of their friendship. Thus, despite Wallerman's appellate contention that misidentification was the only defense strategy at trial, it is apparent that Wallerman did not completely abandon his attempt to show that he did not intend to gain sexual gratification when he attacked Deborah.

In sum, Wallerman never waived his "no intent" defense by completely conceding that Deborah's attacker wanted sexual gratification and wanted to harm her when she refused. Since he did not openly acknowledge that the State had proved the necessary mental state elements, and indeed contested the issue during trial, the court had no basis on which it could have anchored a ruling that the State was engaged in an unnecessary effort to use Kristin's testimony as evidence of Wallerman's motive and intent.

██

We now turn to Wallerman's alternative argument regarding the prejudicial effect of the "other acts" evidence. Our analysis of his trial strategy likewise answers his contention that the trial court should have deemed the State's "other acts" evidence prejudicial. Since Wallerman maintained his challenge to the State's proof of motive and intent, the calculus of

whether the probative value of this evidence was *substantially outweighed* by the danger of unfair prejudice never tipped towards exclusion. *See* § 904.03, STATS. We also note that the trial court carefully instructed the jury immediately after the State presented its "other acts" evidence about how this evidence could only be used to answer the issue of Wallerman's possible motive and intent. This effort signals to us that the trial court was aware of the prejudicial danger of the State's evidence and took a rational step to alleviate the risk. *See State v. Johnson*, 121 Wis. 2d 237, 254, 358 N.W.2d 824, 832 (Ct. App. 1984). We conclude that the trial court properly exercised its discretion when it permitted the State to introduce the "other acts" evidence.

·*By·the Court.*—Judgments affirmed.