STATE of Wisconsin, Plaintiff-Respondent,†

v.

Jerry J. DEKEYSER, Defendant-Appellant.

Court of Appeals

*No. 98–0174–CR. Submitted on briefs July 10, 1998.—Decided August 18, 1998.*

(Also reported in 585 N.W.2d 668.)

†Petition to review denied.

435

436

· On behalf of the defendant-appellant, the cause was submitted on the briefs *Steven L. Miller* of *Miller & Miller*, River Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Cane, C.J., Myse, P.J., and Hoover, J.

MYSE, P.J. Jerry DeKeyser appeals an order denying his motion to suppress other acts evidence, a judgment of conviction for sexual contact under § 948.02(2), STATS., and an order denying postconvic-

tion relief. DeKeyser contends that his counsel was ineffective for failing to stipulate to elements of his offense in order to avoid the introduction of other acts evidence.[1] We conclude that DeKeyser's attorney was deficient for not knowing about the possibility of and failing to propose such a stipulation as a means of excluding other acts evidence, and we further conclude that such deficiency was prejudicial. We therefore reverse the conviction and remand this matter for further proceedings.

## FACTS

DeKeyser was charged with having sexual contact with his fifteen-year-old granddaughter. The State filed a motion to introduce *Whitty* evidence[2] of an accusation that DeKeyser had unlawful sexual contact with another fifteen-year-old granddaughter four years earlier. Charges were not brought on the earlier accusation because the alleged victim elected not to pursue the matter.

DeKeyser's attorney sought to prevent the introduction of this testimony both prior to trial and at trial. After the trial court ruled against these attempts, DeKeyser's attorney persuaded the trial court to read a

---

[1] DeKeyser also argues that his trial counsel was ineffective for failing to strike several jurors for cause, and that the trial court erroneously exercised its discretion by permitting the other acts evidence. We do not address these arguments because we reverse the judgment on other grounds. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

[2] *Whitty v. State*, 34 Wis. 2d 278, 293, 149 N.W.2d 557, 564 (1967), held that prior acts could be admitted into evidence despite the fact that the acts did not lead to a criminal conviction.

cautionary instruction on the evidence prior to its introduction. The instruction stated, in part:

> Now, you may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case.
>
> The evidence was received—or the evidence has been—is going to be received on the issues of intent, and that is whether the defendant acted with the state of mind that is required for this offense.
>
> It is received on the issue of preparation or plan. That is, whether such other conduct of the defendant was part of a design or scheme that led to the commission of the offense charged.
>
> And also it is being received on the issue of absence of mistake or accident. That is, whether the defendant acted with the state of mind required for this offense.
>
> Now, you may consider this evidence only for the purposes that I have described, giving it the weight you determine it deserves. It is not to be used to conclude that the defendant is a bad person and for that reason is guilty of the offense which he is charged with here in the instant case.

There was no physical evidence of any sexual contact between DeKeyser and his granddaughter, and the trial therefore focused on the credibility of the alleged victim and the defendant. The granddaughter testified that DeKeyser placed his hands between her legs while she was sitting on his lap, and squeezed her vagina through her blue jeans until a ringing telephone allowed her to escape. DeKeyser denied the touching and testified that he was not in the house at the time of the alleged incident. He substantiated his alibi with

440

testimony from his wife and the victim's four-year-old cousin. In addition, the person who placed the phone call to DeKeyser during the alleged incident testified that the victim answered the phone on the first ring, giggled, and told her that everybody was outside.

In order to show motive, intent, preparation, plan, and the absence of mistake, the State introduced other acts evidence in the form of testimony from another of DeKeyser's granddaughters that DeKeyser fondled her breasts four years earlier when she was also fifteen years old. The jury ultimately found DeKeyser guilty.

Subsequently, DeKeyser brought a postconviction motion alleging ineffective assistance of trial counsel. DeKeyser contended that his attorney was deficient for failing to stipulate that the purpose of the alleged contact would have been sexual gratification and that the age of the victim was under sixteen. DeKeyser argued that conceding these elements would have rendered the other acts evidence inadmissible because that stipulation would have limited the issue at trial to whether the touching occurred. At the motion hearing, DeKeyser's trial counsel testified that he did not offer such a stipulation because he was unaware that he could do so. Counsel explained that his strategy was to do everything legally permissible to keep out that evidence, and that had he known about the possibility of stipulating to the elements he would have convinced his client to do so.

The trial court denied DeKeyser's motion. While agreeing that "there would have been no real reason for defendant to not logically concede [those] elements," the court noted that such a concession was unlikely given DeKeyser's adamant denial of the charges. In addition, the court concluded that it would not have accepted such a stipulation because the other acts evi-

dence was necessary to prove the touching occurred either through demonstrating a scheme or by demonstrating DeKeyser's signature. Finally, the court concluded that there was not a reasonable probability of a different outcome in the absence of the other acts evidence because the jury likely placed little weight on the evidence.

## STANDARD OF REVIEW

DeKeyser contends that his conviction should be reversed because he was denied the effective assistance of counsel. The constitutional right to counsel is the right to the effective assistance of counsel. *State v. Johnson*, 153 Wis. 2d 121, 126, 449 N.W.2d 845, 847 (1990). In reviewing claims of ineffective assistance of counsel we follow a two-part test. First, the trial counsel's performance must be deficient. *Id.* at 127, 449 N.W.2d at 847. This requires the defendant to overcome a strong presumption that his or her counsel acted reasonably within professional norms. *Id.* at 127, 449 N.W.2d at 847–48. Second, the defendant must show that counsel's deficiencies were so prejudicial that they deprived him or her of trial "whose result is reliable." *Id.* at 127, 449 N.W.2d at 848.

We review the trial court's ineffective assistance of counsel decision as a mixed question of law and fact. *State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69, 76 (1996). We will not overturn a trial court's finding of fact concerning circumstances of the case and counsel's conduct and strategy unless the findings are clearly erroneous. *Id.* Our application of these facts to the constitutional standards, however, is a question of law we

review independently of the trial court's determination. *Id.* at 236–37, 548 N.W.2d at 76.

## ANALYSIS

DeKeyser contends that his trial counsel was deficient for failing to concede that the purpose of the act was sexual gratification and that the victim was under sixteen in order to avoid the introduction of the other acts evidence. Specifically, DeKeyser faults his attorney for failing to know about the case of *State v. Wallerman*, 203 Wis. 2d 158, 552 N.W.2d 128, 132 (Ct. App. 1996), which states that a defendant can concede elements of a crime in order to avoid the introduction of other acts evidence. We agree that trial counsel's failure to know and apply *Wallerman* was deficient performance and prejudiced the outcome of the trial.

The other acts evidence could have been admitted to prove that the touching, if it occurred, in the instant case was for the purpose of sexual gratification. A *Wallerman* stipulation, however, would have conceded this element and eliminated the admission of the other acts evidence. The trial court rejected DeKeyser's deficiency of counsel argument because it concluded that DeKeyser would not have agreed to concede both that if a touching occurred it was for the purpose of sexual gratification and the age of the victim. The trial court further concluded that the other acts had relevance apart from such concessions had they been offered. In determining whether DeKeyser's attorney's performance was deficient, we must review whether the trial court properly concluded that these reasons were a sufficient basis for rejecting the stipulation. While we do not hold that a trial court is without discretion to accept a *Wallerman* stipulation because that issue is

not before us, a trial court erroneously exercises its discretion if it rejects such a stipulation based on an erroneous view of the law. *See Schaefer v. Village Bd.*, 177 Wis. 2d 287, 292, 501 N.W.2d 901, 903 (Ct. App. 1993). Because the reasons advanced by the trial court for rejecting the stipulation are based on an erroneous view of the law, the court's conclusion that it would have rejected the stipulation would have been an erroneous exercise of discretion.

█

Before a court can accept a defendant's concession of certain elements to avoid other acts evidence, *Wallerman* sets forth the necessary criteria for accepting such a stipulation. After having considered whether there is sufficient evidence to prove the elements to which the stipulation applies, the court should: (1) determine exactly what the defendant is conceding; (2) assess whether the other acts evidence would still be necessary despite the concession; (3) personally voir dire the lawyers and the defendant to ensure they understand the effects of the concession; and (4) address these matters pretrial where possible. *Id.* at 167–68, 552 N.W.2d at 132–33. The court's rejection was based on the second and third requirements.

Beginning our analysis with the third requirement, the trial court found that DeKeyser would not have agreed to the stipulation. We conclude that this finding is clearly erroneous. At his postconviction motion hearing, DeKeyser proposed a stipulation conceding the purpose of the act and the age of the victim. DeKeyser's appellate counsel represented to this court that DeKeyser agreed to the proposed stipulation. These facts demonstrate DeKeyser's willingness to stipulate to these elements in order to avoid the other acts evidence. DeKeyser's willingness to stipulate is

further supported by our review of the trial record. At trial, DeKeyser's sole strategy was to contest the element that the sexual contact occurred and he therefore did not contest the age of the victim or suggest a defense of mistake or accident.[3] Given this trial strategy, we see no reason to suggest that DeKeyser would not have specifically conceded the two elements in a *Wallerman* stipulation in order to avoid the introduction of other acts evidence. The trial court's finding to the contrary is unsupported by the record, and therefore is clearly erroneous.

The trial court alternatively rejected DeKeyser's deficiency of counsel argument on the grounds that the other acts evidence had relevance apart from the elements DeKeyser would have conceded. The trial court concluded that the evidence was admissible in order to show identity and scheme. On appeal, the State also argues that that the evidence was necessary to show the absence of mistake.[4] We conclude that the evidence could not have been used for purposes other than those addressed by the proposed stipulation.

█

In determining whether the other acts evidence could have been introduced to show identity, plan, or the absence of mistake, we follow the procedure set forth in *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d

---

[3] The State contends that DeKeyser did raise the issue of mistake or accident. We discuss, and reject, this issue, *infra*.

[4] The State also appears to make the argument that the other acts evidence could have been introduced to show preparation. It is unclear from the brief, however, how this is a different argument from that used for a plan. If the State intended to make a separate argument, we will not consider it because it is inadequately briefed. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992).

30 (1998). The first step in the analysis is to determine whether the other acts evidence is offered for a permissible purpose, such as those listed in § 904.04(2), STATS. *Id.* at 783, 576 N.W.2d at 37. Other acts evidence used to establish that "the accused had a corresponding character trait and acted in conformity with that trait" is not permitted because it constitutes a showing of propensity, for which other acts evidence is not admissible. *Id.* at 781–82, 576 N.W.2d at 36. The second step is to determine whether the other acts evidence is relevant. *Id.* at 786, 576 N.W.2d at 38. Finally, if the other acts evidence is otherwise admissible, the third step is to determine whether the trial court erroneously exercised its discretion by weighing the probative value of the other acts evidence against its prejudicial effects. *Id.* at 789, 576 N.W.2d at 39.

We begin our review with whether the other acts evidence could have been used to establish either the defendant's identity or the absence of mistake or accident. We conclude that although these are permissible purposes, *see* § 904.04(2), STATS., these purposes were not relevant under the facts of this case.

■

In determining relevancy, we first must determine whether the evidence relates to a fact or proposition of consequence to the action. *See Sullivan*, 216 Wis. 2d at 785, 576 N.W.2d at 38. Beginning with identity, we note that DeKeyser did not raise identity as a defense. DeKeyser never contended that his granddaughter might have wrongly accused him of sexual contact perpetrated by another. There was no dispute in this case that DeKeyser committed the act if it occurred. As the trial court noted, the case centered on credibility issues; if the jury believed the granddaughter, it would have to agree that DeKeyser committed the act. The

use of other acts to establish identity was therefore irrelevant.

For similar reasons, the use of the other acts to establish the absence of mistake was irrelevant. In order to be relevant for this purpose, the defendant must first assert the defense of mistake or accident. In the present case, this defense was not used. DeKeyser's sole trial strategy was to vehemently deny his presence at the time of the contact, an argument that is incompatible with a defense of mistake.

The State, however, argues that DeKeyser opened the door to such a defense by suggesting that his conduct was innocent. For support, the State refers to DeKeyser's testimony that the victim initiated several types of contact with him throughout the evening, including hugging him and placing her head in his lap. Upon review of the record, we are convinced that this testimony was not intended to suggest an alternate defense of mistake. DeKeyser's testimony was that these incidents occurred at different times than the assault, and was only introduced in response to questions about whether his granddaughter had been acting strangely and whether he had any explanation for the "false" accusation.[5] DeKeyser did not suggest that he may have accidentally touched his granddaughter's vagina during these incidents. We therefore reject the argument that the other acts evidence was relevant to dispute a defense of mistake or accident.

We next turn to whether the other acts could be used to establish plan. The word "plan" in § 904.04(2), STATS., "means a design or scheme formed to accom-

---

[5] DeKeyser hypothesized that his granddaughter might have earlier hatched a scheme to accuse him, and that her behavior was an effort to trap him.

plish some particular purpose." *State v. Spraggin*, 77 Wis. 2d 89, 99, 252 N.W.2d 94, 98 (1977). "Evidence showing a plan establishes a definite prior design, plan, or scheme which includes the doing of the act charged." *Id*. This requires more than a similarity between the prior act and the offense charged; there must be a linkage between the two events that permits the conclusion that the other act led to the commission of the offense charged. *State v. Roberson*, 157 Wis. 2d 447, 453, 459 N.W.2d 611, 613 (Ct. App. 1990); *see also* WIS J I—CRIMINAL 275 (other acts evidence must be "part of a design or scheme that led to the commission of the offense charged."). Thus, the evidence of the prior sexual contact with another granddaughter only proves a plan if it indicates that *at least by the time of the contact* DeKeyser also intended eventually to violate his other granddaughters.

The State claims the other similar act demonstrates that DeKeyser had a plan to achieve sexual gratification from his young granddaughters, and that the existence of this plan made the commission of the offense charged more likely. While this appears to come close to an unlawful propensity argument, such arguments seem permissible and do relate to a fact or proposition of consequence; namely, that the act occurred. *See State v. Friedrich*, 135 Wis. 2d 1, 23, 398 Wis. 2d 763, 773 (1987) (evidence of a plan can show the doing of the act); *see also* 2 JOHN H. WIGMORE ON EVIDENCE § 304 at 249 (James H. Chadbourne ed. 1979) (evidence of a plan is relevant in order to prove the doing of the act).

■

The second consideration in determining relevancy requires us to assess "probative value, that is, whether the evidence has a tendency to make a conse-

quential fact more probable or less probable than it would be without the evidence." *Sullivan,* 216 Wis. 2d at 786, 576 N.W.2d at 38. When seeking to use other acts evidence to establish a plan, the probative value requirement obligates the State to show more than the mere fact that a similar occurrence happened beforehand. As Dean Wigmore has stated, under these circumstances "it is obvious that something more is required than that mere similarity" which is sufficient to show intent. WIGMORE ON EVIDENCE, § 304 at 249. Because "the effort is to establish a definite prior design or system which included the doing of the act charged as a part of its consummation," there must be *"such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." Id.* (emphasis in original).

The other acts evidence that the State seeks to introduce does not meet this test. To prove a plan, the State must show that at least four years before this offense DeKeyser intended to violate his other granddaughters at some later point in time. The prior act does not prove the existence of such a plan. Assuming the truth of the allegations in the prior act, all the State has shown is that DeKeyser violated the same law, under similar circumstances, with another granddaughter.[6] This by itself is insufficient to demonstrate

[6] The State refers us to the following similarities: (1) both involved 15-year-old granddaughters; (2) both occurred on Saturdays at one of DeKeyser's homes apparently in the early evening; (3) DeKeyser initiated both incidents by scratching or rubbing the victims' backs; (4) the incidents appeared to proceed in stages, beginning with the back rubbing, and occurred in part while each of the victims was alone with the appellant and in part while each of the victims was watching small children; (5)

the existence of a plan hatched over four years ago to commit the crime now charged.

Our conclusion that the State has failed to demonstrate a plan is supported by two additional reasons. First, if we accepted the State's argument in this case, we would effectively abrogate the statutory bar on propensity arguments that the supreme court continues to accept. *See, e.g., Sullivan,* 216 Wis. 2d at 781–82 n.10, 576 N.W.2d at 36–37 n.10. If the law against propensity evidence is to retain its vitality, we cannot allow the State to prove DeKeyser committed this offense by relying on evidence of a single prior incident without any other evidence of a plan.

Second, we reject the State's position because it cannot rest alongside the *Wallerman* decision. The holding in *Wallerman* recognized the possibility that a defendant could concede some elements in order to avoid other acts evidence. Under the State's position, this would no longer be true: regardless whether a defendant conceded intent, other acts evidence would always be permissible to demonstrate that the defendant had a plan that encompassed both the prior act and the conduct charged. Because no defendant who pled not guilty could stipulate to the existence of a plan while maintaining his innocence, evidence of plan would always be relevant and *Wallerman* would be rendered meaningless. We therefore conclude that the

---

both assaults occurred while the victims were watching television with the appellant; (6) there were never any adults around; (7) both incidents involved the fondling of the victims' body parts without penetration; (8) both incidents were of brief duration and ended when the victims were able to break free from the appellant and leave the room; and (9) both incidents appeared to be of a "grooming nature," done to test the willingness of the victims to report the incident.

other acts evidence in this case was insufficient to establish a plan.

Because we conclude that there were no grounds on which the trial court could properly have admitted the other acts evidence if DeKeyser had conceded motive, we must reject the reasons offered by the court for concluding that it would not have accepted the stipulation. Accordingly, we conclude DeKeyser's trial counsel was deficient for failing to know about the possibility of a *Wallerman* stipulation. This is especially true in light of the defense strategy to avoid the other acts evidence by all lawful means. Trial counsel is expected to know the law relevant to his or her case, particularly when it is so closely tied in with defense strategy. DeKeyser has therefore demonstrated that his counsel made errors so serious that the defendant was not truly afforded his or her constitutional right to counsel. *See Johnson*, 153 Wis. 2d at 127, 449 N.W.2d at 847.

We turn now to the second and final step of DeKeyser's ineffective assistance of counsel claim. Where counsel is deficient, the defendant must demonstrate that this deficiency was so prejudicial as to deprive him or her of a trial "whose result is reliable." *Id.* at 127, 449 N.W.2d at 848. This does not require the defendant to show that a different outcome would have resulted if the deficiency had not occurred. *Id.* Rather, " 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* at 129, 449 N.W.2d at 848 (quoting *Strickland v. Washington*, 466 U.S.668, 694 (1984)).

451

We conclude that counsel's deficiency in failing to offer a *Wallerman* stipulation was prejudicial. Our confidence in the outcome of the trial is undermined because of the high likelihood that the jury used the other acts evidence as proof of character and action in conformance with that character, contrary to § 904.04(1), STATS.

We begin by acknowledging that the trial court read a cautioning instruction both immediately prior to the introduction of the other acts evidence and immediately prior to jury deliberations. We also acknowledge that the record reveals that DeKeyser's counsel was effective in challenging the credibility of the other acts evidence after it was introduced. Nevertheless, we conclude that these factors are insufficient to overcome the unfair prejudice in this case.

First, we conclude that the cautioning instruction did not substantially lessen the possibility that the jury improperly used the other acts evidence to demonstrate DeKeyser's propensity. Normally, a cautioning instruction is sufficient to cure any adverse effect attendant with the admission of other acts evidence. *See Sullivan*, 216 Wis. 2d at 790, 576 N.W.2d at 40. In this case, however, the instruction did not. The jury instruction invited the jury to consider the other acts evidence to establish preparation or plan, and thus the doing of the act. In effect, this was nothing more than an invitation to the jury to follow the State's incorrect logic and use the evidence to establish DeKeyser's propensity to commit the offense.

An additional factor that undermines the effectiveness of the cautionary instruction is that the instruction permitted the jury to consider the other acts evidence to establish the lack of mistake or acci-

dent. As we have concluded, the evidence could not properly be used for this purpose because the defense of mistake or accident was never raised by DeKeyser.

Our second reason for concluding there was a high likelihood that the jury used the other acts evidence to prove propensity is that all those involved in the trial recognized the potential use of this evidence as corroboration of the victim's allegation. The trial court accepted the evidence in part because it concluded that "it's necessary on the State's case to bolster it. And when I say 'necessary,' I mean as opposed to the State having some sort of confessions from the defendant or eye-witnesses or types of things where this evidence would be somewhat cumulative." The State noted in its trial brief that it considered the evidence "crucial" to its proof of the defendant's plan or scheme, an argument we have concluded was in actuality propensity. Finally, DeKeyser's attorney recognized this potential misapplication when it argued to the trial court that the State was really seeking "to prove that Mr. DeKeyser's alleged touching of [his oldest granddaughter's] breasts in 1992 somehow helps prove that he touched [the victim's] genital area in 1996."

By offering a *Wallerman* stipulation, DeKeyser could have avoided the introduction of this important evidence, and the accordant likelihood that the jury would improperly use it. We therefore conclude that there is a reasonable probability that the result would have been different if DeKeyser's counsel properly offered the stipulation. In reaching this determination, however, we do not mean to suggest that counsel's failure to offer a *Wallerman* stipulation to exclude other acts evidence from being introduced will always require a reversal of a sexual assault conviction. Coun-

sel may decline to utilize such a stipulation for a variety of strategic reasons. Such a decision is not deficient performance. Further, the receipt of other acts evidence will not always be prejudicial to the defendant. The evidence of guilt may be adequate even without the other acts evidence or the other acts evidence may be of such a nature that it has little impact on the jury. In such cases the receipt of the other acts evidence, even if it could have been excluded by a stipulation, would not undermine our confidence in the verdict. In the instant case, however, the evidence depended entirely on whether the jury credited the testimony of the alleged victim or the defendant. The other acts evidence was so dramatic even the trial court erroneously perceived the evidence as corroboration of the victim's testimony. Here everyone acknowledged the critical role such evidence played in the jury's consideration of the evidence under the unique circumstances of this case. The failure to attempt to exclude this evidence necessarily affects the reliability of the verdict in this case. Accordingly, the conviction is reversed and the matter is remanded for a new trial.

*By the Court.*—Judgment and orders reversed and cause remanded.

CANE, C.J. *(dissenting)*. I respectfully dissent from the majority's conclusion that defense counsel was deficient and prejudicial. The question whether counsel's actions constitute ineffective assistance is a mixed question of law and fact. *State ex rel. Flores v. State*, 183 Wis. 2d 587, 609, 516 N.W.2d 362, 368–69 (1994). The circuit court's findings of fact will not be reversed unless they are clearly erroneous. *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711, 714

(1985). However, the ultimate conclusion whether counsel's conduct was deficient and prejudicial are questions of law decided independently by this court. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845, 848 (1990).

It is important to note our standard of review when determining whether counsel's conduct was deficient or prejudicial. Only those defendants "who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be . . . entitled to retrial . . . ." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). Note that it is the *gross* incompetence of the attorney that entitles the defendant to a retrial. To establish deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Johnson*, 153 Wis. 2d at 127, 449 N.W.2d at 847 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To demonstrate deficient performance, a defendant bears the burden to overcome a strong presumption that counsel acted reasonably and within professional norms. *Id.* at 127, 449 N.W.2d at 847–48. In making a determination whether counsel was deficient, we must keep in mind that counsel's function is to make the adversarial testing process work in that particular case. *Pitsch*, 124 Wis. 2d at 636–37, 369 N.W.2d at 716.

Prejudice occurs when counsel's deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. To demonstrate prejudice, a defendant must show a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Johnson*, 153 Wis. 2d at 129, 449 N.W.2d at 848. A reasonable probability is one suffi-

cient to undermine confidence in the outcome of the trial. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Pitsch,* 124 Wis. 2d at 642, 369 N.W.2d at 719.

I am not persuaded that counsel's failure to stipulate as the majority suggests constitutes gross incompetence or was so serious that the adversarial process did not function, resulting in an unfair trial. DeKeyser is not entitled to a perfect defense or even the best defense, but only to one which gives him reasonably effective representation. Although counsel was unaware of the *Wallerman*[1] case, he strongly challenged the admissibility of the other acts evidence both before and during the trial. He also aggressively challenged the credibility of the State's witnesses through cross-examination and presented defense witnesses challenging the child's credibility.

The suggestion that counsel should have stipulated under the theory of *Wallerman* in order to avoid the admission of the other acts evidence is remarkable hindsight. One must keep in mind that *Wallerman* was not an ineffective assistance of counsel case. Rather, it dealt with whether the State may introduce other acts evidence even if the defendant does not dispute certain elements of the crime. Additionally, it dealt with the colloquy the trial court must engage in with the defendant in order to ensure his understanding of the concession. The majority in this case now takes that case one step further by concluding that counsel is ineffective for failing to stipulate to motive and intent in order to avoid the admission of the other acts evidence. While I agree with the majority that counsel erred by

---

[1] *State v. Wallerman,* 203 Wis. 2d 158, 552 N.W.2d 128 (Ct. App. 1996).

not stipulating or conceding these elements in order to prevent the admission of the other acts evidence, I do not agree that when viewing counsel's overall conduct in this case his error constituted gross incompetence or was so serious that he was not functioning as "counsel."

Nor do I conclude that counsel's error by not stipulating was prejudicial. Again, prejudice occurs when counsel's deficient performance deprived DeKeyser of a fair trial such that it undermines our confidence in the outcome of the trial. Here, the jury heard the evidence which was strongly contested on both sides. Although it heard evidence of the other act, the court also gave a cautionary instruction both immediately before the introduction of the other act evidence and immediately prior to jury deliberations.

The trial court gave the standard jury instruction cautioning the jury to consider the other conduct, if they found it did occur, only on the issue of intent, preparation or plan and absence of mistake or accident. As part of this instruction, it admonished the jury that the other acts evidence is not to be used to conclude the defendant is a bad person and for that reason is guilty of the offense charged. This cautionary instruction in effect resulted in the other acts evidence having the same effect as the stipulation. The majority's suggestion that the jury may have improperly used this other acts evidence is contrary to the long- established principle that we must presume the jury will follow the court's instructions.

Certainly, there was no breakdown in the adversarial process. Nor was there a fundamental unfairness in the proceeding. What we have is a hard fought, fair trial as to whether the sexual assault ever occurred. Contrary to the majority, I am not persuaded

that DeKeyser's trial attorney was grossly incompetent or that DeKeyser was denied a fair trial.

Additionally, at the postconviction proceedings, counsel offered a proposed stipulation unsigned by DeKeyser. There is absolutely no proof that DeKeyser would have agreed to enter into such a stipulation. He did not testify at the postconviction hearing and did not offer any affidavit to the effect that he would have willingly and understandingly entered into such a stipulation. In fact, the trial court commented at the postconviction hearing that it doubted whether DeKeyser would have accepted such a concession. Additionally, it observed that it would not have accepted such a stipulation in any event because of DeKeyser's position that there was no touching of his grandchild's intimate parts, let alone an intentional touching. Throughout these proceedings, DeKeyser vehemently denied ever touching the private parts of any of his grandchildren. To now suggest he would have stipulated is wonderful hindsight in light of the jury's verdict.

Finally, DeKeyser contends his trial counsel was deficient for failing to challenge certain jurors for cause when they initially expressed possible bias against him after being informed that there would be evidence about a similar prior sexual act involving him.[2] However, the trial court instructed the jury that it was their duty to decide the case on the evidence and to be fair and impartial. Additionally, it admonished the jury that if they were unable to render a fair and impartial decision, they should not be on the jury. It then asked the jury whether, after hearing the court's instructions

---

[2] I address this issue only because the majority found it unnecessary to reach this issue in light of its conclusion on the basis of DeKeyser's first argument.

regarding their duty to follow its instructions and decide the case solely on the evidence, there was still anyone who believed they could not decide the case fairly and impartially. No juror responded in the affirmative. Trial counsel testified at the postconviction hearing that he was satisfied with the jurors' response to the court's questions and elected to use peremptory strikes against those jurors he felt were objectionable. I am not persuaded counsel's performance in selecting the jury was deficient.

Therefore, I would reject DeKeyser's arguments and affirm the conviction.