STATE of Wisconsin, Plaintiff-Respondent,

v.

David J. CLEVELAND, Defendant-Appellant.†

Court of Appeals

*No. 99–2682–CR. Submitted on briefs April 17, 2000.—Decided May 23, 2000.*

## 2000 WI App 142

(Also reported in 614 N.W.2d 543.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Suzanne Hagopian*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Diane M. Welsh*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1.  CANE, C.J.   David Cleveland appeals from an amended judgment of conviction entered upon a jury's verdict finding him guilty of four counts of first-degree sexual assault of a child, two counts of attempted first-degree sexual assault of a child and one count of exposing a child to harmful material, contrary to WIS. STAT. §§ 948.02(1), 939.32 and 948.11(2)(a).[1] Cleveland additionally appeals from an order denying his postconviction motions.

¶ 2.  Cleveland argues that: (1) his trial counsel was ineffective for failing to stipulate that the photographs contained in a trial exhibit were harmful to children, within the meaning of WIS. STAT. § 948.11(2)(a); (2) a new trial should be granted in the interest of justice because the exhibit photographs prevented the real controversy from being fully and fairly tried; and (3) two of his first-degree sexual assault of a child convictions violate double jeopardy. We reject Cleveland's arguments and affirm the judgment.

### BACKGROUND

¶ 3.  Cleveland was convicted of seven sexual offenses involving Melissa M., age eleven, and her sister Kelsey M., age seven, the children of Cleveland's live-in girlfriend. At trial, Melissa recounted the instances in which Cleveland had touched her. She testified that on one occasion, he touched her breasts while they played hide-and-seek.  Melissa also testified that on another occasion, Cleveland touched her breasts and vaginal area while she wore a leather

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

jacket he was polishing. She stated that as she stood on a chair, he polished the jacket on her shoulders, back and her "private area above the waist," rubbing the latter area for what seemed to her "like more than he did the rest of the coat." Melissa estimated that Cleveland rubbed her chest for about a half a minute. She further testified that after Cleveland finished polishing the coat, he picked her up under the arms "with his hands over the private area above the waist," squeezing her breasts as he placed her on the floor. Melissa added that while she was standing on the floor, Cleveland came up behind her, started rubbing her "private part below the waist," and whispered "doesn't that feel good."

¶ 4. Regarding the two counts of first-degree attempted sexual assault of a child, both Melissa and Kelsey testified that Cleveland had asked them to touch his penis, but each refused. Cleveland testified that he never asked the children to touch his penis and additionally denied the hide-and-seek incident. Cleveland acknowledged that he asked Melissa to wear the leather jacket and then polished it with a rag and saddle soap. He denied lifting Melissa off the chair, however, or touching her vaginal area.

¶ 5. Cleveland's conviction for exposing a child to harmful material involved a page from a magazine entitled "Hustler's Barely Legal." The page, received into evidence as exhibit 11, advertised pornographic videos and contained thirty-seven photographs of naked men and women engaged in various sex acts. Melissa testified that she found the magazine while rummaging through a vacant trailer with Kelsey and Cleveland. She further testified that Cleveland took the magazine from her, showed her a page containing many pictures of "naked men and women, body parts"

and quietly commented on the pictures. A sheriff's department investigator testified that when she obtained the magazine from Cleveland, he identified the page he had shown to Melissa. According to the investigator, Cleveland also told her that while showing the page to Melissa he had commented about various things in the pictures. Conversely, Cleveland testified that he opened the magazine after the children left the room, made some comments under his breath, and then realized that Melissa was standing beside him, trying to look at the magazine, at which point he closed it.

¶ 6. Characterizing exhibit 11 as "replete with grossly prejudicial materials the child did not see," defense counsel objected to the State's request to pass exhibit 11 among the jurors during its closing argument. The trial court overruled the objection, concluding that although Melissa may have recalled only one or two of the pictures, she testified that Cleveland showed her the entire page. The court, ruling that the jury would have the exhibit during its deliberations, stated:

> Well, they are going to get it. I will tell you right now they are going to get the exhibit. They have to because they have to decide as the trier of fact whether it's harmful to children. Nobody else can make that judgment. Nobody has asked me to make a judgment on it. They are getting it.

¶ 7. The jury convicted Cleveland and the trial court denied his postconviction motions. This appeal followed.

I. EFFECTIVE ASSISTANCE OF COUNSEL

¶ 8.   Cleveland argues that he was denied effective assistance of counsel. This court's review of an ineffective assistance of counsel claim is a mixed question of fact and law. *See State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). The trial court's findings of fact will not be disturbed unless they are clearly erroneous. *See id.* "However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law which this court reviews independently of [the trial court]." *Id.*

¶ 9.   Wisconsin employs a two-prong test to determine the validity of an ineffective assistance of counsel claim. *See id.* (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). To succeed on his claim, Cleveland "must show both (1) that his counsel's representation was deficient and (2) that this deficiency prejudiced him." *Id.* at 768 (citing *Strickland*, 466 U.S. at 694). Further, we may reverse the order of the tests "or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice." *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990) (citing *Strickland*, 466 U.S. at 697).

¶ 10.   In order to establish deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 127 (quoting *Strickland*, 466 U.S. at 687). However, "every effort is made to avoid deter-

minations of ineffectiveness based on hindsight ... and the burden is placed on the defendant to overcome a strong presumption that counsel acted reasonably within professional norms." *Id.* In reviewing counsel's performance, we judge the reasonableness of counsel's conduct based on the facts of the particular case as they existed at the time of the conduct, and determine whether, in light of all the circumstances, the omissions fell outside the wide range of professionally competent representation. *See Strickland*, 466 U.S. at 690.

¶ 11. The prejudice prong of the *Strickland* test is satisfied where "the attorney's error is of such magnitude that there is a reasonable probability that, absent the error, 'the result of the proceeding would have been different.'" *Erickson*, 227 Wis. 2d at 769 (quoting *Strickland*, 466 U.S. at 694).

¶ 12. Citing *Old Chief v. United States*, 519 U.S. 172 (1997), Cleveland argues that a defendant may stipulate to various elements of a crime charged in order to prevent the admission of prejudicial evidence. Cleveland contends his counsel was ineffective for failing to prevent the jury from seeing exhibit 11 by offering to stipulate that the exhibit was harmful to children. *Old Chief*, however, is distinguishable from the present case. There, the Court held that the district court abused its discretion by denying a defendant's offer to stipulate to the legal status element of a crime. *Id.* at 174; *see also State v. Alexander*, 214 Wis. 2d 628, 651, 571 N.W.2d 662 (1997).[2]

---

[2] Consistent with *Old Chief v. United States*, 519 U.S. 172 (1997), in *State v. Alexander*, 214 Wis. 2d 628, 571 N.W.2d 662 (1997), the defendant admitted to the status element of the crime charged. Our supreme court held that when the sole purpose of introducing evidence of a defendant's prior convictions is

¶ 13.   Old Chief was charged with violating 18 U.S.C. § 922(g)(1), which prohibits possession of a firearm by anyone with a prior felony conviction. Old Chief subsequently offered to stipulate to § 922(g)(1)'s prior-conviction element. He argued that the offer rendered evidence of the name and nature of his prior offense—assault causing serious bodily injury—inadmissible because its probative value was substantially outweighed by the danger of unfair prejudice. The Court recognized the general rule that "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief*, 519 U.S. at 186–87. It noted:

> The "fair and legitimate weight" of conventional evidence showing individual thoughts and acts amounting to a crime reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness. . . . [The] persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.

*Id.* at 187.

¶ 14.   The Court nevertheless reasoned that this general rule has "virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." *Id.* at 190. It further stated that "proof of the defendant's status goes to an element entirely outside the natural sequence of what the defendant is

to prove the status element of an offense, its probative value is far outweighed by the danger of unfair prejudice. *See id.* at 645.

567

charged with thinking and doing to commit the current offense." *Id.* at 191. Consequently, the Court held that although Old Chief's conviction record was probative of the felony-convict status element of the current crime charged against him, its probative value was substantially outweighed by the risk of unfair prejudice. *See id.*

¶ 15. Cleveland additionally relies on this court's decisions in *State v. DeKeyser*, 221 Wis. 2d 435, 585 N.W.2d 668 (Ct. App. 1998) and *State v. Wallerman*, 203 Wis. 2d 158, 552 N.W.2d 128 (Ct. App. 1996). In *DeKeyser*, this court recognized that "a defendant can concede elements of a crime in order to avoid the introduction of other acts evidence." *DeKeyser*, 221 Wis. 2d at 443 (citing *Wallerman*, 203 Wis. 2d at 166–67). The present case, however, is distinguishable from the cases Cleveland cites because it involves neither the status element of a crime nor the admission of other acts evidence.

¶ 16. The evidence at issue here related to Cleveland's conviction for exposing a child to harmful material, contrary to WIS. STAT. § 948.11. For Cleveland to be found guilty of this crime, the State had to prove that (1) he exhibited material to Melissa; (2) he had knowledge of the nature of the material; (3) the material was harmful to children;[3] and (4) Melissa had not

---

[3] The term "harmful to children" is defined as:

that quality of any description, narrative account or representation, in whatever form, of nudity, sexually explicit conduct, sexual excitement, sadomasochistic abuse, physical torture or brutality, when it:

1.  Predominantly appeals to the prurient, shameful or morbid interest of children;

2.  Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for children; and

attained the age of eighteen years at the time of the offense. *See* WIS JI—CRIMINAL 2142. Cleveland argues his trial counsel was ineffective because he did not offer to stipulate that exhibit 11 was harmful to children. We disagree.

¶ 17.   Whether exhibit 11 is harmful to children, within the meaning of WIS. STAT. § 948.11(1)(b), is at the heart of the offense charged. Exhibit 11 does not establish a status element, *see Old Chief*, 519 U.S. at 191, nor does it fall under the category of other acts evidence. *See DeKeyser*, 221 Wis. 2d at 443. Cleveland nevertheless intimates that he should have had the right to stipulate to its harmfulness. At the *Machner* hearing,[4] Cleveland's trial counsel testified that he had not considered such a stipulation. Cleveland relies on *DeKeyser* in contending that trial counsel's failure to consider the stipulation constitutes deficient performance. Cleveland is mistaken. In *DeKeyser*, this court concluded that an attorney was deficient for failing to know about the option of a *Wallerman* stipulation. *See DeKeyser*, 221 Wis. 2d at 443. *DeKeyser*, like *Wallerman*, however, involved a defendant's desire to prevent the admission of other acts evidence. *See DeKeyser*, 221 Wis. 2d at 439–40. These cases do not govern where, as here, a defendant seeks to stipulate to an element that is neither characterized as a status element nor related to other acts evidence. Although, in hindsight, it may have been good strategy to offer to

---

3.   Lacks serious literary, artistic, political, scientific or educational value for children, when taken as a whole.

WIS. STAT. § 948.11(1)(b).

[4] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) ("[I]t is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel.").

stipulate to the harmfulness of the exhibit, Cleveland's trial counsel was not deficient for failing to do so.[5] *See Johnson*, 153 Wis. 2d at 127 ("every effort is made to avoid determinations of ineffectiveness based on hindsight").

¶ 18. In any event, Cleveland has failed to show how he was prejudiced by any alleged deficient performance on the part of his trial counsel. He argues that counsel's alleged deficiency in failing to stipulate to the harmfulness element was prejudicial because of the substantial likelihood that exhibit 11 influenced the outcome by improper means. Specifically, because the jury returned guilty verdicts in just over one hour, he contends that the jury likely used the exhibit as propensity evidence or, alternatively, was so outraged by its contents that it based the verdicts on the desire to punish rather than an assessment of the evidence.[6] We are not persuaded.

---

[5] At the *Machner* hearing, the prosecutor testified that had Cleveland offered to stipulate to the "harmful to children" element, he would have accepted the stipulation. Despite the prosecutor's post-trial belief that he would have agreed to the stipulation, he would have been under no obligation to do so. Trial counsel, therefore, was not deficient for failing to suggest it. *See State v. Flynn*, 190 Wis. 2d 31, 48, 527 N.W.2d 343 (Ct. App. 1994) (A defendant must base a challenge to counsel's representation on more than speculation.).

[6] Cleveland contends that the prosecutor's closing argument encouraged the jury to use the exhibit as propensity evidence. The prosecutor stated: "We do have the luxury of one very important item. Did Melissa make this up? So we did for a change have the extraordinary luxury in a child sexual assault case of having gross, disgusting corroborating evidence." In context of the State's argument, however, the prosecutor intimated that Melissa was credible because her description of the page Cleveland showed her was consistent with exhibit 11. In any

¶ 19.  Although the exhibit was prejudicial to Cleveland, exclusion of evidence "is required only if the evidence is *unfairly* prejudicial." *State v. Patricia A.M.*, 176 Wis. 2d 542, 554, 500 N.W.2d 289 (1993) (emphasis added). Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. Here, the exhibit went to prove an essential element of the offense. Moreover, it is reasonable to expect the jury to be offended by material it finds harmful to children. In order to establish that the exhibit was "harmful to children," WIS. STAT. § 948.11(1)(b) requires, in part, that the material be "patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for children." Cleveland has failed to prove that the jury used exhibit 11 for any improper purpose.

¶ 20.  Because Cleveland has failed to show how his counsel's performance was deficient or how he has been prejudiced by any of the claimed deficiencies, we conclude that Cleveland was not denied effective assistance of counsel.

II.  NEW TRIAL IN THE INTEREST OF JUSTICE

¶ 21.  Cleveland seeks a new trial under WIS. STAT. § 752.35, which permits us to grant relief if we are convinced "that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." In order to establish that the real

event, the jury was properly instructed that the attorneys' remarks, opinions and closing arguments are not evidence.

controversy has not been fully tried, Cleveland must convince us "that the jury was precluded from considering 'important testimony that bore on an important issue' or that certain evidence which was improperly received 'clouded a crucial issue' in the case." *State v. Darcy N.K.*, 218 Wis. 2d 640, 667, 581 N.W.2d 567 (Ct. App. 1998) (quoting *State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996)). To establish a miscarriage of justice, Cleveland "must convince us 'there is a substantial degree of probability that a new trial would produce a different result.' " *Darcy*, 218 Wis. 2d at 667 (quoting *State v. Caban*, 210 Wis. 2d 597, 611, 563 N.W.2d 501 (1997)). An appellate court will exercise its discretion to grant a new trial in the interest of justice "only in exceptional cases." *State v. Cuyler*, 110 Wis. 2d 133, 141, 327 N.W.2d 662 (1983).

¶ 22.  As we discussed above, exhibit 11 went to prove an essential element of the crime and its offensive nature related directly to the jury's finding that it was "harmful to children." The exhibit did not cloud a crucial issue; rather, the exhibit was necessary to establish the harmfulness element of the offense. Cleveland has failed to prove that the jury used the exhibit for improper means and has further failed to convince us that a new trial would produce a different result. Accordingly, we conclude there is no reason to exercise our discretionary authority under WIS. STAT. § 752.35 to grant Cleveland a new trial.

III.  DOUBLE JEOPARDY

¶ 23.  Cleveland contends that his separate convictions for first-degree sexual assault of a child arising from (1) touching Melissa's breast while polishing the

leather coat; and (2) squeezing her breasts while lifting her off the chair violate the double jeopardy protections of the state and federal constitutions. The double jeopardy protections prohibit multiple convictions for the same offense. *See State v. Reynolds*, 206 Wis. 2d 356, 363, 557 N.W.2d 821 (Ct. App. 1996). "Whether a violation exists in a given case is a question of constitutional law which we review de novo." *Id.* We analyze claims of multiplicity using a two-prong test: "1) whether the charged offenses are identical in law and fact; and 2) if the offenses are not identical in law and fact, whether the legislature intended the multiple offenses to be brought as a single count." *State v. Anderson*, 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998).

¶ 24. Under the first prong, we must determine whether "we are reviewing multiple charges brought under different statutory sections (a 'lesser-included offense' challenge), or multiple charges brought under one statutory section (a 'continuous offense' challenge)." *Id.* at 747. Whether the focus is on the law or the facts depends on the particular challenge raised.

> In a "lesser-included offense" challenge, the factual situations underlying the offenses are the same, so our focus is on whether the offenses are also identical in law. In a "continuous offense" challenge, the course of conduct is alleged to have constituted multiple violations of the same statutory provision, so our focus is not on statutory definitions but on the facts of a given defendant's criminal activity.

*Id.* (citations omitted). Here, the two convictions for first-degree sexual assault of a child are identical in law because both are contrary to the same statute, WIS. STAT. § 948.02(1). Consequently, our focus is on the facts of Cleveland's offenses.

¶ 25. "Charged offenses are not multiplicitous if the facts are either separated in time or of a significantly different nature." *Anderson*, 219 Wis. 2d at 750. Here, the State concedes that the two incidents were separated by only a short period of time. It nevertheless argues that each contact was based on a separate volitional choice by Cleveland. We agree. Our supreme court recognized that even if the challenged offenses are not separated in time, they may nonetheless be different in fact if they are significantly different in nature. *See id.* at 751. Offenses are "significantly different in nature if each requires 'a new volitional departure in the defendant's course of conduct.' " *Id.* at 750. A defendant's "successive intentions make him [or her] subject to cumulative punishment, and he [or she] must be treated as accepting that risk." *Id.*

¶ 26. Cleveland's conduct in (1) rubbing Melissa's breasts, from the front, while polishing the jacket; and (2) squeezing her breasts, from behind, as he lifted her off the chair are significantly different. Each offense required a different and new volitional act on the defendant's part. We therefore conclude that these two convictions for first-degree sexual assault of a child do not violate the double jeopardy provisions of the federal and state constitutions.

*By the Court.*—Judgment and order affirmed.