STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles J. BENOIT, Defendant-Appellant.†

Court of Appeals

*No. 98–1531–CR. Submitted on briefs April 26, 1999.—Decided July 28, 1999.*

(Also reported in 600 N.W.2d 193.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Meredith J. Ross*, clinical associate professor, *Frank J. Remington Center* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

SNYDER, P.J.  Charles J. Benoit appeals from judgments convicting him of party to a burglary as a habitual offender in violation of §§ 943.10(1), 939.05 and 939.62, STATS., and bail jumping contrary to § 946.49(1)(b), STATS. Benoit raises two issues. First, he claims that by stipulating to an element of burglary he was denied his right to a jury trial on the element. Because we conclude that the constitutional protec-

tions accompanying the right to a jury trial were not implicated, we reject Benoit's position.

Next, he contends that he was provided ineffective assistance of counsel because his attorney failed to renew a change of venue motion following voir dire and because he did not supplement the trial record with additional news reports linking Benoit to an unrelated double homicide. We are not persuaded by Benoit's argument and thus affirm the trial court.

On February 19, 1997, at approximately 1:45 a.m., police responded to a burglar alarm at Machut's Supper Club in Two Rivers, Wisconsin. Police officers arrived at the scene to find evidence of a recent break-in. They observed Dennis Benoit, Charles's brother, exit the supper club and flee on foot. After apprehending him, police found over $1000 cash in his pockets. When the officers returned to the restaurant parking lot, they discovered Benoit "crouched down on the passenger side" of a vehicle parked in a corner of the lot. Benoit was then arrested.

Benoit was charged with party to a burglary. The criminal complaint was subsequently amended to include two counts of intentionally failing to comply with the terms of his bail bond contrary to § 946.49(1)(a), STATS.[1] At trial, the jury found Benoit guilty on the burglary count and afterwards the court found him guilty of one count of bail jumping. Benoit

---

[1] The amended complaint and the information included two counts of bail jumping, one in Kewaunee county and the other in Brown county. This information was later amended to allege violations of § 946.49(1)(b), STATS. (for Class D felonies), rather than para. (1)(a) (for Class A misdemeanors).

then brought a postconviction motion, which was denied.[2] He appeals.

## A. Stipulation to Burglary Element

■

Benoit first contends that his stipulation to an element of burglary was constitutionally insufficient to waive his right to a jury trial on the element. Whether Benoit's constitutional and statutory right to a jury trial was violated is a question of law which we review independently of the trial court. *See Wagner Mobil, Inc. v. City of Madison*, 190 Wis. 2d 585, 591, 527 N.W.2d 301, 303 (1995).

Prior to trial, Benoit and his trial counsel stipulated to the owners' nonconsent, the second element of burglary.[3] The colloquy proceeded as follows:

> THE COURT: And, [District Attorney] Fitzgerald, you indicated that there was a second stipulation?
>
> MR. FITZGERALD: And that is to the consent element of burglary, it is the stipulation of the parties that the owners of Machut's restaurant in the city of Two Rivers, County of Manitowoc did not give consent to anyone to enter with the intent to steal their premises on . . . February 19, 1997.
>
> THE COURT: I think the information indicates on or about February 19.

---

[2] Due to Judge Allan J. Deehr's retirement, Judge Patrick L. Willis presided over Benoit's March 20, 1998 postconviction motion hearing.

[3] Burglary comprises the following elements: (1) intentionally entering a building, (2) without the consent of the person in lawful possession, (3) with knowledge that the entry is without consent, and (4) with intent to steal. *See* § 943.10(1), STATS.; WIS J I—CRIMINAL 1421.

And the purpose of that stipulation is to alleviate the necessity of an owner testifying to nonconsent?

MR. FITZGERALD: Yes, Your Honor.

THE COURT: And, [Defense Attorney] Radosevich, is that the stipulation that has been reached?

MR. RADOSEVICH: Yes, Your Honor. I have consulted with the defendant on that, and he is in agreement with that stipulation.

THE COURT: All right, and that's correct, Mr. Benoit?

DEFENDANT BENOIT: Yes, Your Honor.

At the close of evidence, the trial court again asked Benoit whether he wished to stipulate to the nonconsent element. Benoit responded that he did.

The court then instructed the jury on the nonconsent element of burglary:

The State must prove by evidence which satisfies you beyond a reasonable doubt that the following four elements of burglary were present.

. . . .

The second element requires that Dennis Benoit entered the building without the consent of the person in lawful possession.

The court subsequently informed the jury that

[t]he District Attorney and the attorney for the defendant have stipulated or agreed to the existence of certain facts, and you must accept these facts as conclusively proved. . . . The owners of Machut's Supper Club . . . did not give consent to anyone on or about February 19, 1997 to enter their premises and steal property.

Benoit argues that the trial court erred in concluding that he had received a jury trial on the element of nonconsent. Citing *Kemp v. State*, 61 Wis. 2d 125, 211 N.W.2d 793 (1973), *State v. Villarreal*, 153 Wis. 2d 323, 450 N.W.2d 519 (Ct. App. 1989), and *State v. Wallerman*, 203 Wis. 2d 158, 552 N.W.2d 128 (Ct. App. 1996), he claims that he should have been provided a thorough colloquy ensuring a "voluntary, knowing and intelligent waiver" of his right to a jury trial on the nonconsent element. *See Villarreal*, 153 Wis. 2d at 326, 450 N.W.2d at 521. Because these cases are distinguishable from the situation at hand, we reject Benoit's position.

We begin with *Kemp*. There, Kemp, who was charged with · first-degree murder, personally requested that the court decide the case from stipulated facts. *See Kemp*, 61 Wis. 2d at 127, 129–30, 211 N.W.2d at 794, 795. In concluding that the court's determination of guilt was supported by the facts, our supreme court noted that the court had "very carefully and thoroughly explained to the defendant all of his rights, including the right and importance of a jury trial and the effect of waiver." *Id.* at 130, 211 N.W.2d at 795. Kemp knowingly waived his right to present any evidence on his behalf, reviewed a copy of the stipulated facts as found in the preliminary examination record and was provided "extensive advice and admonitions as to his procedural rights." *Id.* Furthermore, Kemp's counsel repeatedly reviewed the matter with Kemp and confirmed that he fully understood his rights. *See id.*

*Kemp* is not controlling here because the present case does not involve waiver of a jury trial. Unlike *Kemp*, Benoit did not stipulate to all of the facts in the case; rather, he merely waived his right to challenge

636

one issue—nonconsent. In its jury instructions, the court advised the jury that Benoit had stipulated to the nonconsent element and that the jury must view the facts as conclusively proven. The court then instructed the jury on the elements of burglary, *including* nonconsent. The jury then made a complete and final determination of guilt based on the evidence presented; the court played no role as fact finder. Conversely, in *Kemp*, the trial court was the ultimate fact finder. The court there proceeded with caution because Kemp was completely waiving his right to a jury trial on the issue of guilt.[4] *See Kemp*, 61 Wis. 2d at 130, 211 N.W.2d at 795. *Kemp* does not apply here because Benoit did not waive his right to a jury trial; he merely conceded an element of the charged crime.

Next, we consider *Villarreal*, in which the defendant was charged with first-degree murder by use of a dangerous weapon. *See Villarreal*, 153 Wis. 2d at 325, 450 N.W.2d at 520. In the midst of the jury trial, Villarreal's counsel conceded that there was no dispute concerning the dangerous weapon issue and therefore stipulated that the dangerous weapon element should be removed from jury consideration and be determined by the trial court. *See id.* Villarreal was ultimately convicted of second-degree murder and the trial court made a determination that she had used a dangerous weapon. *See id.*

On appeal, Villarreal argued that because use of a dangerous weapon was an element of the charged offense, the trial court could not decide the issue absent "an express personal waiver of the right to a jury trial" on the element. *See id.* at 324, 450 N.W.2d at 520. We

---

[4] A jury trial, however, was conducted on the issue of the defendant's "mental responsibility." *See Kemp v. State*, 61 Wis. 2d 125, 130, 137, 211 N.W.2d 793, 795, 798 (1973).

agreed, noting that the right to a jury trial is a personal and fundamental constitutional right that cannot be waived unless the defendant "personally on the record, makes a voluntary, knowing and intelligent waiver." *See id.* at 326, 450 N.W.2d at 521. In addition, a defendant has the right to a jury determination on every element of the charged crime. *See id.* Because Villarreal's counsel permitted an element of the charged crime to be addressed by the court, not the jury, and because Villarreal was entitled to a jury trial on all of the elements, we concluded that only an express personal waiver would permit the court to decide an element of the charged offense.

While *Villarreal* is a closer case, it is not dispositive. Here, Benoit sought a jury trial on the issue of his involvement in the burglary. Prior to trial, he agreed not to challenge the issue of nonconsent so as to avoid having the restaurant owners testify. At the close of evidence, he repeated his intention to waive the issue. The jury was then instructed that because the element of nonconsent had been stipulated, it was considered proven. Unlike *Villarreal*, the nonconsent issue was not passed on to the court; instead, it was merely conceded by Benoit. Because the jury was instructed on all of the elements of the crime, Benoit received a jury trial on every element. His stipulation, therefore, did not constitute a waiver of his right to a jury trial; and, thus, Benoit did not need to make an express personal waiver to render the stipulation valid.

Lastly, in *Wallerman*, we set forth a methodology for handling a defendant's stipulation to an element of a crime for which the State wishes to introduce "other acts" evidence. *See Wallerman*, 203 Wis. 2d at 167, 552 N.W.2d at 132. We adopted this methodology "to ensure that the record contains conclusive evidence

which the jury may rely on to find guilt before [the court] relieves the State of the duty to prove that element." *Id.* While *Wallerman* offers a ready-made procedure for addressing a defendant's stipulation to a criminal element, we confine this approach to "other acts" evidence.

"Other acts" evidence is, by its nature, subject to close scrutiny by the trial court. Evidence of other acts or bad acts is generally not admissible. *See* § 904.04(2), Stats.; *State v. Poh*, 116 Wis. 2d 510, 524, 343 N.W.2d 108, 116 (1984). Courts take a guarded approach to such evidence because "[i]t is thought that other acts evidence will distract the jury, subtly encourage jurors to infer that the defendant has a propensity to commit such wrongs, and invite punishment of the defendant because he [or she] is, for reasons other than the offense charged, a bad person." *Poh*, 116 Wis. 2d at 524, 343 N.W.2d at 116; *see State v. DeKeyser*, 221 Wis. 2d 435, 454, 585 N.W.2d 668, 677 (Ct. App.), *review denied*, 221 Wis. 2d 656, 588 N.W.2d 633 (1998) (recognizing the dramatic nature of other acts evidence). We are further wary of "other acts" evidence based on the following considerations:

> (1) The overstrong tendency to believe the defendant guilty of the charge merely because he [or she] is a person likely to do such acts; (2) the tendency to condemn not because he [or she] is believed guilty of the present charge but because he [or she] has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the confusion of issues which might result from bringing in evidence of other crimes.

639

*Whitty v. State*, 34 Wis. 2d 278, 292, 149 N.W.2d 557, 563 (1967); *see* 7 DANIEL D. BLINKA, WISCONSIN PRACTICE: EVIDENCE § 404.5 at 110 (1991).

The evidence here is of an entirely different nature. To establish the element of nonconsent, the State would have likely elicited the restaurant owners' testimony that they had not given anyone permission to burglarize their restaurant. By stipulating to nonconsent, Benoit relieved the State from having to put forth this evidence. Benoit's concession was a matter of expediency. Unlike other acts evidence, the stipulated evidence here was not subject to such concerns as juror prejudice, distraction or confusion of issues. We are therefore persuaded that the *Wallerman* methodology does not apply.

■

In sum, we conclude that neither *Kemp*, *Villarreal* nor *Wallerman* provides special protections for a defendant seeking to stipulate to an element of a crime where (1) the jury is instructed on the element and (2) the court does not resolve the issue on its own. Because these conditions were met in this case, Benoit's argument must fail.

## B.   Ineffective Assistance of Counsel

Five days after his February 19, 1997 arrest for party to burglary in Manitowoc county, Benoit was charged as party to the homicides of two elderly sisters in neighboring Kewaunee county. Both the burglary and the homicide charges were reported in area news reports. Benoit now claims that his trial attorney provided ineffective assistance of counsel because he failed to renew his change of venue motion upon completion of voir dire and failed to supplement the court record with additional news reports concerning Benoit.

■ In reviewing an ineffective assistance of counsel claim, we must consider whether counsel's performance was both deficient and prejudicial to the defendant. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985). An attorney's performance is deficient if his or her representation falls below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 689. A strong presumption exists that counsel acted reasonably. *See id.* As to prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

■ The issue of ineffective assistance of counsel involves mixed questions of law and fact. *See Pitsch*, 124 Wis. 2d at 633–34, 369 N.W.2d at 714. Although we will not reverse the trial court's findings of fact absent clear error, *see* § 805.17(2), STATS., whether counsel's conduct was deficient and prejudicial to the defendant are issues of law which we review de novo, *see Pitsch*, 124 Wis. 2d at 634, 369 N.W.2d at 715.

In addressing deficiency, we first look to counsel's pretrial performance. On April 4, 1997, approximately six weeks after Benoit's arrest on February 19, counsel brought a motion in limine and a motion to sever the bail jumping and burglary charges. These motions were filed in response to area radio, television and newspaper reports, which were disseminated from February 19 to March 1, linking Benoit to the double homicide and burglary. Counsel asked the court to pre-

clude any reference to the pending homicide charges during trial. Counsel also sought to exclude television cameras from the courtroom and to permit Benoit to appear without any visible restraints. He further requested that venue be changed or that a jury panel from outside the Green Bay television coverage area be obtained based on the media coverage. In support of his motion, counsel presented the court with three clippings from the Manitowoc HERALD TIMES REPORTER, including two front-page stories that carried Benoit's picture and captions addressing both the double homicide and the burglary.

The court granted Benoit's motions except as to change of venue, which the court left open subject to a "reasonable probability of prejudice." The court found the newspaper reports to be straightforward and commented that it believed it could "antiseptically approach the jury with questions" so as to avoid reference to the homicides. The court concluded that if "it appears that we have failed . . . defense counsel is at liberty to renew the motion."

Prior to jury selection on the day of the trial, the court instructed the parties that it would ask general questions about whether any of the prospective jurors had heard anything about Benoit's burglary charge and, if so, whether they had heard anything that did not relate to the case. Benoit's counsel accepted the court's line of inquiry so long as it only asked about *whom* the jurors had heard "unrelated information," not about *what* the unrelated facts involved.

During voir dire, the court proceeded to inquire about the burglary news reports. The court explained that it "wanted to know . . . what the source of your information was, was it the newspaper, was it radio or was it television or was it all of those . . . . I don't want

to know what you heard or saw, all I want to know is how did you hear something." In response, nine out of the twenty potential jurors raised their hands. Of these, two indicated that they had heard reports on television, four had heard radio broadcasts and eight had read newspaper accounts. The court then asked whether

> any of you ha[ve] learned or heard anything about any of these individuals [Charles Benoit, Dennis Benoit and the law enforcement officers] who are involved in this case in some way or another. Have you heard or learned anything about any of these individuals that does not relate to this case?
>
> And again—okay, all I'm going to ask is just who is the person that you heard something about, please, please I do not want to know what, all I want to know is who that person is . . . .

In response, juror Leroy Folletz stated that he had heard something about Benoit and that he would not be able to judge him fairly. Folletz was immediately excused for cause. No other jurors responded to the court's inquiry. Once voir dire was completed, three of the final twelve jurors consisted of persons asserting their familiarity with the burglary news reports.

In support of his ineffective assistance of counsel argument, Benoit sets forth several factors found in *McKissick v. State*, 49 Wis. 2d 537, 182 N.W.2d 282 (1971), addressing whether a trial court should have granted a change of venue motion. These considerations include the following:

> The inflammatory nature of the publicity; the degree to which the adverse publicity permeated the area from which the jury panel would be drawn; the timing and specificity of the publicity; the

degree of care exercised, and the amount of difficulty encountered, in selecting the jury; the extent to which the jurors were familiar with the publicity; and the defendant's utilization of the challenges, both peremptory and for cause, available to him on voir dire.

*Id.* at 545–46, 182 N.W.2d at 286. While Benoit would have us examine each of the *McKissick* factors, we note that these considerations go to the conduct of the trial court, not counsel. Although we may consider the *McKissick* factors in our ineffective assistance of counsel analysis, they are not binding on our decision.

Upon review of the record, we conclude that counsel's performance was not deficient. First, we recognize that following the February 19 through March 1 publicity of Benoit's homicide and burglary charges, counsel appropriately brought a motion to sever the charges and a motion in limine to preclude any mention of the homicide case during the trial. Counsel also requested, and the court granted, a motion to eliminate television cameras from the courtroom and permit Benoit to appear without visible restraints.

Next, at the motion in limine hearing and at trial, counsel further sought to ensure that the court appreciated the potential for juror bias pertaining to the pretrial publicity. We believe that the court heeded counsel's concerns because it stated that it wished to "antiseptically" approach the jury with questions. In conducting voir dire, the court asked whether anyone had learned anything about the individuals involved in the burglary that did not relate to the case. As counsel had admonished, the court instructed the jury panel that it only wanted to know who that person was, not what the information was about. While the court had a difficult task in providing enough information to elicit

appropriate responses without suggesting what the "unrelated information" was, we believe the court was successful. Indeed, after asking the jury panel about any unrelated information, one juror immediately responded that he had heard additional information about Benoit and that this information would preclude him from deliberating fairly. After this juror was dismissed for cause, no other jurors responded.

Of the twelve jurors selected, only three indicated their exposure to pretrial media coverage.[5] In addition, the most recent news report had been disseminated five weeks prior to trial. Considering the entirety of these circumstances, we cannot say, based upon an objective standard of reasonableness, that counsel should have renewed his motion for change of venue once voir dire was completed.

Finally, Benoit argues that counsel should have provided the court with further documentation of the pretrial publicity. In addressing this claim, we initially consider the newspaper reports that counsel gave the court. First, a front-page article in the February 25, 1997 HERALD TIMES REPORTER carried a picture of Benoit and a headline reading, "Local suspect tied to killings," with a subheading stating, "Man charged in restaurant burglary accused of killing Casco sisters." The article then detailed the charges against Benoit for the burglary and double homicide. Second, a March 1 front-page article presented similar information as the February 25 story and contained a picture of Benoit wearing arm restraints while sitting in a courtroom. The third newspaper story addressed security

---

[5] While Benoit's counsel used only two of his four peremptory challenges to eliminate jurors who had been exposed to pretrial publicity, Benoit does not claim that this strategy was improper.

problems at the Manitowoc county courthouse and offered only minimal information about Benoit's burglary and homicide charges. When the trial court reviewed these articles, it found them to be "straightforward," "factual in nature" and without "editorializing."

In his brief, Benoit offers numerous examples of television reports that he argues were inflammatory and should have been brought to the court's attention. One such Green Bay television report, broadcast on February 24, 1997, stated the following:

> Charles Benoit has been charged in the Cadigan sister murders. The Kewaunee County District Attorney filed a criminal complaint today . . . charging Benoit with two counts of party to first degree intentional homicide. Police say Benoit was Beth LaBatte's boyfriend when the Cadigan sisters were murdered in 1991. The two sisters were found beaten and stabbed to death in their rural Casco home. LaBatte was charged with the murders in December. Benoit appeared in a Manitowoc County court today . . . after he and his brother Dennis were arrested last week for an unrelated burglary in Two Rivers.

While this television report and others like it may have contained slightly more provocative reports than those found in the newspaper articles, we are not convinced that counsel's failure to supplement the court record constituted deficient performance. We therefore conclude that Benoit has failed to overcome the presumption that counsel's performance was reasonable under the circumstances. Thus, because Benoit is unable to establish the first element of an ineffective

assistance of counsel claim, we need not address the other. *See Strickland*, 466 U.S. at 697.[6]

*By the Court.*—Judgments affirmed.

[6] We note that in Benoit's brief-in-chief, he asserts that by failing to renew the change of venue motion after voir dire, counsel waived the opportunity to challenge on appeal the original pretrial motion. Benoit contends that this waiver constituted deficient performance and was prejudicial to him. However, as the State points out, a defendant who makes a motion in limine preserves the right to appeal the issue raised by the motion without renewing the motion at trial. *See State v. Bergeron*, 162 Wis. 2d 521, 528, 470 N.W.2d 322, 324 (Ct. App. 1991). Therefore, while Benoit may address on appeal the change of venue issue, he may only do so to the extent that the issue was raised during the motion in limine hearing.

Benoit's reply brief latches onto the State's position that counsel did *not* waive his objection to the denial of the change of venue motion. Consequently, Benoit asks this court to grant him a new trial on the ground that the trial court erroneously exercised its discretion in denying the original change of venue motion. While Benoit then cites generally to *Hoppe v. State*, 74 Wis. 2d 107, 246 N.W.2d 122 (1976) (addressing a denial of a change of venue motion under the *McKissick* factors), he presents no further argument as to how the trial court may have misused its discretion. Because Benoit does not provide any further explanation pursuant to the *McKissick* factors, we decline to address the matter further. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992) (an appellate court need not review an issue inadequately briefed).