In re the Termination of Parental Rights to Lyle D. E., Jr., a person under the age of 18:

Walworth County Department of Health & Human Services, Petitioner-Respondent,

v.

Andrea L. O., Respondent-Appellant.

Supreme Court

No. 2007AP8. *Oral argument December 11, 2007. —Decided May 28, 2008.*

2008 WI 46

(Also reported in 749 N.W.2d 168.)

For the respondent-appellant there were briefs and oral argument by *Suzanne L. Hagopian,* assistant state public defender.

For the petitioner-respondent there was a brief and oral argument by *Michelle M. Snead,* assistant corporation counsel.

A guardian ad litem brief was filed by *James P. Martin* and *James P. Martin, S.C.,* Lake Geneva, and there was oral argument by *James P. Martin.*

An amicus curiae brief was filed by *Timothy Baxter, John T. Chisholm, Elisabeth Mueller,* and *Christine M. Quinn* on behalf of the Wisconsin District Attorneys' Association.

¶ 1. ANN WALSH BRADLEY, J. This case is before the court on certification from the court of appeals pursuant to Wis. Stat. § 809.61 (2005–06).[1] Andrea L.O. appeals a circuit court order terminating her parental rights to her son Lyle E., Jr. (Junior) on the ground that he was in continuing need of protection or services.

¶ 2. The parties agreed to stipulate to the first element of the ground, that is, that Junior had been adjudged a child in need of protection or services (CHIPS) and placed outside the home for a cumulative total period of six months or longer pursuant to one or more court orders containing the termination of parental rights notice required by law. Andrea maintains such a stipulation constitutes an invalid withdrawal of her demand for a jury trial on that element. She argues that it is invalid because the circuit court erred in failing to engage her in a personal colloquy in order to determine that the withdrawal was knowing and voluntary.

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

The appeal is from an order of the Circuit Court for Walworth County, Robert J. Kennedy, Judge.

¶ 3.   We determine that Andrea received a jury trial on the element regardless of the stipulation. The stipulation in this case does not constitute a withdrawal of the demand for a jury trial on an element. Despite the fact that the parties agreed to enter a stipulation regarding the first element of the ground for termination, the jury was presented with ample evidence of the element, was instructed on the element, and answered a verdict question on that element.

¶ 4.   We further determine that there would be no error here even if the circuit court rather than the jury had decided the first element. Under the circumstances of this case, the circuit court was not required to engage in a personal colloquy in order to ascertain that a withdrawal was knowing and voluntary. Andrea agreed to the stipulation in open court. The stipulation addressed a single, undisputed, "paper" element[2] where another element was the focus of the controversy at issue. Additionally, there was ample uncontroverted evidence to support the stipulated element. Accordingly, we affirm the order of the circuit court terminating the parental rights.

I

¶ 5.   Junior is the child of Andrea and Lyle E. ("Lyle"). When Junior was two, the Walworth County Department of Health and Human Services ("County") filed a petition seeking to terminate the parental rights of both Andrea and Lyle. The ground for termination

---

[2] We have used the term "paper grounds" in the context of a termination of parental rights proceeding to describe grounds for unfitness which may be proven by official documentary evidence such as court orders or judgments of conviction. *Steven V. v. Kelly H.,* 2004 WI 47, ¶ 37, 271 Wis. 2d 1, 678 N.W.2d 856.

alleged in the petition was that Junior was in continuing need of protection or services.

¶ 6. There are four elements to this ground for termination. First, the child must have been placed out of the home for a cumulative total of more than six months pursuant to court orders containing the termination of parental rights notice. Second, the County Department of Social Services must have made a reasonable effort to provide services ordered by the court. Third, the parent must fail to meet the conditions established in the order for the safe return of the child to the parent's home. Fourth, there must be a substantial likelihood that the parent will not meet the conditions of safe return of the child within the 12–month period following the conclusion of the termination hearing.[3]

¶ 7. Andrea and Lyle denied the allegations in the petition and the matter was set for a jury trial. The County submitted requests for admissions prior to trial. It requested, among other things, that Andrea admit that Junior "has been placed out of his home for more than 6 months, pursuant to one or more court orders containing the TPR warnings." An answer signed by Andrea's attorney replied to that request with an admission.

¶ 8. On the morning of the first day of trial, the County sought a stipulation to the first element "just to possibly avoid needing a clerk to testify." The County articulated the first element as requiring the County to prove:

---

[3] Wis. Stat. § 48.415(2); *Door County Department of Health & Family Services v. Scott S.*, 230 Wis. 2d 460, 464 n.3, 602 N.W.2d 167 (Ct. App. 1999); Wis JI-Children 324.

that the child has been adjudged in need of protection and services and placed outside the home for a cumulative total period of six months or longer pursuant to one or more of the court orders containing the termination of parental rights notice required by law.

¶ 9.   In response, Andrea's attorney stated that "we're willing to stipulate that the answer to question number one should be 'yes.'" Andrea's attorney then asked her whether she understood the issue and whether she was willing stipulate that the statement was true. She responded affirmatively. The transcript of her attorney's communication provides as follows:

Andrea, do you understand that issue and are you willing to stipulate that those things are true; that [Junior] was adjudicated in need of protection or services, that he was placed out of your home and out of [Lyle's] home for a total cumulative period of six months? The answer was yes.

Lyle also agreed to the stipulation through his attorney. The parties prepared a written version of the stipulation, which was signed by the parties' attorneys.

¶ 10.   During opening statements, the County's attorney read the first element of the ground for termination and stated "[t]hat one's already decided." Similarly, Andrea's attorney indicated that whether Junior had been adjudged in need of protection or services and had been placed out of Andrea's home for a total cumulative period of six months "is not seriously in dispute." Rather, he stated that "most of our focus" is on the fourth element—whether there is a substantial likelihood that Andrea will not meet the conditions for return within a year.

¶ 11.   The social worker who handled Junior's case testified at trial. A copy of a prior court order determin-

166

ing that Junior was a child in need of protection or services and which contained the termination of parental rights notice was marked and received as an exhibit. The social worker testified that Junior had been out of Andrea's home pursuant to court order for a cumulative total of 24 months.

¶ 12. Andrea also testified. During her testimony, she admitted that there was a CHIPS order regarding Junior that had been entered about two years before and that she had not contested the order. No evidence was introduced at trial to controvert the stipulation.

¶ 13. Despite the stipulation, the circuit court instructed the jury on all four elements of the ground for termination. It explained that the jury was to consider the evidence for each ground separately:

> You must consider the evidence against each parent separately and consider the evidence as to each ground separately. Each parent is entitled to separate consideration. Your verdict as to each ground should be based solely upon the evidence or lack of evidence as to that ground . . . .

¶ 14. The court stated that the County had to prove that Junior had been adjudged to be in need of protection or services and placed outside the home for a cumulative total period of greater than six months, and stated that there was no dispute as to the question based on the parties' stipulation.

> [Junior] was adjudged to be a child in need of protection or services and placed or continued in placement outside the home of Andrea [L.O.] for a cumulative total period of 6 months or longer pursuant to one or more court orders containing the termination of parental rights notice required by law.
>
> Because there is no dispute in the evidence to this question, I've answered this question. Now, actually, the

167

parties, again, have stipulated to this question. My answer or— For that matter, the stipulation has no bearing whatsoever on what your answer should be to the other questions in the special verdict form.

The court asked whether there was "[a]ny objection to me reading it or saying it that way?" The parties did not object.

¶ 15.   During closing arguments, the County told the jury that question one (regarding the first element) had already been answered, and that it did not need to worry about that question. The jury was provided with a copy of the court dispositional order adjudging Junior to be in need of protection or services which contained the termination of parental rights notice required by law.

¶ 16.   When the jury was presented with a special verdict form, however, none of the questions had been answered. Instead, it was the jury that answered the verdict question addressing the first element.[4] It responded "yes" to the question asking whether Junior had been adjudged in need of protection or services and placed outside the home for a cumulative total period of six months or longer pursuant to one or more court orders containing the termination of parental rights notice required by law. After a dispositional hearing, the circuit court entered an order terminating the parental rights of both Andrea and Lyle.

¶ 17.   Andrea appealed. The court of appeals certified the appeal to this court.

---

[4] At oral argument the parties agreed that it was the jury that answered question one on the special verdict form, despite the circuit court's statement that "I've answered this question. Now, actually, the parties, again, have stipulated to this question."

## II

¶ 18. In this case we address whether a stipulation to an element of the ground for termination in a termination of parental rights (TPR) case constitutes a withdrawal of the demand for a jury trial on that element. We also examine whether a circuit court erred in failing to personally engage a parent in a colloquy to determine whether a withdrawal of the demand for jury trial on an element was knowing and voluntary. These are questions of law that this court reviews independently of the decision rendered by the circuit court. *Steven V. v. Kelly H.,* 2004 WI 47, ¶ 19, 271 Wis. 2d 1, 678 N.W.2d 856; *State v. Benoit,* 229 Wis. 2d 630, 600 N.W.2d 193 (Ct. App. 1999).

¶ 19. Initially we address the effect of the stipulation. Next we examine Andrea's arguments that the circuit court erred in failing to personally engage her in a colloquy to determine that the withdrawal was knowing and voluntary. She bases her arguments on (1) cases involving statutory rights to a jury trial; (2) criminal cases involving stipulations; and (3) due process.

## III

¶ 20. Under chapter 48 of the Wisconsin Statutes, a parent in a termination proceeding may demand a jury trial. Wis. Stat. §§ 48.422(4), 48.31(2), 48.424(2) (intro.). There is no dispute that Andrea made such a demand in this case.

¶ 21. Andrea asserts that by entering into a stipulation regarding the first element of the ground for termination, she withdrew her demand for a jury trial on that element. She maintains, however, that the stipulation here constitutes an invalid withdrawal of

169

her demand for a jury trial. We examine first the effect of the stipulation. Although Andrea entered into a stipulation on the first element, that element was in fact decided by the jury.

¶ 22. The court of appeals addressed a similar situation in the criminal context in *Benoit,* 229 Wis. 2d 630. The defendant in that case was charged with being party to a burglary, one element of which is lack of consent from the person in lawful possession of the building entered. *Id.* at 634. To avoid having the building owners testify, the defendant stipulated to the nonconsent element. *Id.* The court instructed the jury on the nonconsent element, and then informed the jury that the defendant and the district attorney had stipulated to certain facts which the jury should accept as conclusively proved, including that the owners of the building did not give consent to entry. *Id.* at 635.

¶ 23. After being convicted, the defendant argued that he should have been provided a colloquy to ensure that his waiver of a jury trial on the element of nonconsent was knowing, voluntary, and intelligent. The court of appeals determined that the stipulation did not constitute a waiver of his right to a jury trial on the element of nonconsent. *Id.* at 638. Rather, the element had merely been conceded by Benoit. *Id.* The court further determined that because the jury had been instructed on all of the elements of the crime, the defendant received a jury trial on all of the elements, regardless of the existence of the stipulation. *Id.* Thus, the court concluded that there was no requirement to make an express personal waiver in order for the stipulation to be valid. *Id.*

¶ 24. This case is similar. As in *Benoit,* the parties agreed to stipulate to a single element. In each case, despite the stipulation, the court presented the jury

with a question on the element, and in each case the court instructed the jury that the parties had entered the stipulation. In *Benoit,* the court instructed the jury that the stipulated element was conclusively proved. Similarly, in this case the court stated that "I've answered this question. Now, actually, the parties, again, have stipulated to this question." In both cases, the parties stipulated to avoid having to call a witness to testify to the element.

¶ 25. Moreover, the jury had sufficient evidence before it to render its decision on the first element. It was given the CHIPS order showing that Junior had been adjudged in need of protection or services, indicating that he had been placed outside Andrea's home for a cumulative period of six months or longer pursuant to the order, and containing the termination of parental rights notice required by law. The record indicates that Andrea admitted to the element. Further, the social worker and Andrea testified regarding the order during trial.

¶ 26. As in *Benoit,* we determine that the jury decided the element that was the subject of the stipulation. Because the jury decided the element, this is not a case in which a stipulation constitutes a withdrawal of a demand for a jury trial.

IV

¶ 27. We turn next to Andrea's argument that the circuit court erred in failing to personally engage her in a colloquy to determine that a withdrawal of her demand for a jury trial on an element was knowing and voluntary. Her initial argument relies on the rationale and holding of *N.E. v. Wisconsin Dept. of Health &*

171

*Social Servs.,* 122 Wis. 2d 198, 361 N.W.2d 693 (1985). That case also is the focus of the certified question presented by the court of appeals. The certified question is as follows:

> Does the rationale and holding of *N.E. v. DHSS,* a juvenile case arising out of Wis. Stat. ch. 48 (2003–04), govern a termination of parental rights (TPR) case such that a parent must personally withdraw his or her prior demand for a jury trial?

(Internal citation omitted.)

¶ 28. Here, we determine that the stipulation does not constitute a withdrawal of the demand for a jury trial. Because the facts of the case do not present the certified question, we decline to address this broad question posed by the court of appeals. In order to provide guidance to courts and litigants, however, we do address the effect of *N.E.,* along with Andrea's other arguments, on the more narrow circumstances presented in this case. For the purposes of this section, we presume that the stipulation constituted a withdrawal of the demand for a jury trial on an element.

■ .

¶ 29. The right to a jury trial in a termination case is statutory, not constitutional. *Steven V.,* 271 Wis. 2d 1, ¶ 4. Under Wis. Stat. § 48.422(4), if a parent in a termination proceeding requests a jury trial prior to the end of the initial hearing, that request "shall be granted." In a fact-finding hearing in a termination proceeding, the parent may exercise the "right to a jury trial by demanding a jury trial at any time before or during the plea hearing." Wis. Stat. § 48.31(2); *see* § 48.424(2) (intro.) (providing § 48.31 jury trial right for termination proceedings).

¶ 30. Chapter 48 does not provide a procedure for withdrawing a demand for a jury trial or stipulating to an element of the ground for termination in a TPR case, and this court has not addressed the procedures for waiving the right to a jury trial by stipulation in a termination proceeding. Andrea maintains, however, that other cases concerning statutory rights to a jury trial do provide such a procedure. She argues that under *N.E.* and *S.B. v. Racine County,* 138 Wis. 2d 409, 406 N.W.2d 408 (1987), a valid withdrawal of a demand for a jury trial requires that the court address the party personally in a colloquy to determine that the withdrawal is knowing and voluntary. Thus, she contends that the stipulation in this case is an invalid withdrawal of the demand for a jury trial on an element.

¶ 31. In *N.E.,* a juvenile demanded a jury trial in a hearing to determine his delinquency, pursuant to Wis. Stat. §§ 48.30(2) and 48.31(1) (1983–84).[5] 122 Wis. 2d at 200. Later, N.E.'s counsel appeared without N.E. to withdraw the jury demand and set the case for trial to the court. *Id.* at 201.

¶ 32. We determined that once the juvenile has demanded the right to a jury trial, that right must be withdrawn personally, knowingly, and voluntarily.

> [W]e hold, in the interest of judicial administration, that once a juvenile invokes his or her statutory right to a jury trial, this right must be withdrawn personally by the juvenile, either in writing or on the record in open court. The court must then determine that the juvenile's withdrawal was knowing and voluntary.

*Id.* at 201–02.

---

[5] The statutes were subsequently amended such that juveniles are not entitled to demand a jury trial in a delinquency hearing. *See* Wis. Stat. § 938.31(2); *State v. Hezzie R.,* 219 Wis. 2d 848, 858, 580 N.W.2d 660 (1998).

¶ 33. In *S.B.* we addressed withdrawal of a demand for a jury trial in a chapter 51 involuntary civil commitment case. After S.B. demanded a jury trial pursuant to Wis. Stat. § 51.20(11)(a), her attorney withdrew the demand without S.B.'s knowledge or consent. *S.B.*, 138 Wis. 2d at 411. As in the present case, the statute was silent as to the requirements for withdrawing a demand for a jury trial. However, we determined that because the statute required the individual be involved with the decision to demand a jury trial, it also required that the individual be involved with the decision to withdraw the demand.

> [I]t seems obvious that the demand for a jury trial and the withdrawal of that demand are really one and the same decision, namely, whether to have a jury hear the case. When the statute requires the individual to be personally involved in making a demand for a jury, it follows that the individual must be personally involved in withdrawing a demand.

*Id.* at 414.

¶ 34. Although *N.E.* and *S.B.* concern withdrawal of the demand for a jury trial, they are distinguishable from the facts presented here. In each of those cases, a party's attorney withdrew a prior demand for a jury trial while the defendant was not present. In *N.E.*, the attorney did not consult with the juvenile before withdrawing the demand, and in *S.B.*, the attorney withdrew the demand without S.B.'s knowledge or consent. Here, however, the stipulation between the parties took place in Andrea's presence. Moreover, Andrea's attorney asked her in open court whether she understood the issue and whether she was willing to stipulate that Junior was adjudged in need of protection or services and that he had been placed out of her home for six months or more. Andrea answered yes.

¶ 35. A second important difference between the present case and *N.E.* and *S.B.* is that this case does not involve a complete withdrawal of the demand for a jury trial. The parties agreed to stipulate to one element of the ground for termination, but the demand for a jury trial on the other three elements was unaffected. Importantly, Andrea's focus in the case was not on the first element. Her attorney admitted that the first element was "not seriously in dispute." Rather, he explained that the focus was on the fourth element, that is, whether there was a substantial likelihood that Andrea would not meet the conditions for return within a year. In contrast, *N.E.* and *S.B.* involved the withdrawal of the demand for a jury trial on all elements, rather than a stipulation regarding a single element that was not in dispute.

¶ 36. *Door County DHFS v. Scott S.,* 230 Wis. 2d 460, 602 N.W.2d 167 (Ct. App. 1999), provides further guidance on this point. As in the present case, the circuit court terminated Scott's parental rights on the ground that his daughter was in continuing need of protection or services pursuant to § 48.415(2). The circuit court directed the verdict on the question of whether the child had been adjudged to be in need of protection or services and placed outside the home pursuant to one or more court orders. *Id.* at 464. The court of appeals determined that the circuit court had not erred in directing the verdict. It reasoned that the verdict was directed "as to only one undisputed element" and that because Scott had ample opportunity to introduce evidence, the directed verdict was appropriate. *Id.* at 467.

¶ 37. The present case does not involve a directed verdict on the first element. However, the reasoning from *Scott S.* applies. Andrea has not disputed the first

element and no evidence has been introduced controverting that element. Rather, there was sufficient evidence introduced supporting the first element. The record indicates that Andrea responded affirmatively to a request for admission that Junior had been "placed out of his home for more than 6 months, pursuant to one or more court orders containing the TPR warnings." The social worker in the case testified that Junior had been out of Andrea's home pursuant to CHIPS orders for a cumulative total of 24 months. Andrea testified that there was a CHIPS order entered regarding Junior about two years prior. The order was admitted as an exhibit and given to the jury to consider in its deliberations.

¶ 38. Further, the element to which the parties stipulated was an uncontested element, based on an official document which could have been proven by the testimony of a clerk of court. Indeed, the reason the parties entered the stipulation was to avoid having the clerk of court testify. In this respect, the case is similar to this court's decision in *Steven V.,* 271 Wis. 2d 1.

¶ 39. In *Steven V.,* the circuit court granted a guardian ad litem's motion for summary judgment in the unfitness phase of a termination of parental rights case based on the undisputed fact that Kelly H. had been denied placement and visitation by a court order that had been in place, unmodified, for more than two years. *Id.,* ¶ 2. We determined that partial summary judgment was appropriate, and did not violate the parent's statutory right to a jury trial.

¶ 40. The basis for our determination was that some statutory grounds for unfitness are "paper grounds," which is to say they are expressly provable by official documentary evidence, such as court orders or judgments of conviction. *Id.,* ¶ 37. We explained that

the risk of error in applying partial summary judgment on such grounds is extremely low when the grounds are uncontested. *Id.,* ¶ 42.

¶ 41. This case does not involve partial summary judgment on a paper ground. Nonetheless, the reasoning of *Steven V.* is applicable. The element of the ground to which the parties stipulated is a paper element. It is expressly provable by the official documentary evidence of a copy of the court dispositional order adjudging Junior to be in need of protection or services. Moreover, the element is uncontested. Thus, similar to *Steven V.,* the risk of error in stipulating to the element in this case is extremely low. *Id.*[6]

¶ 42. In addition to her argument based on *N.E.* and *S.B.,* Andrea argues that criminal cases involving stipulations support the conclusion that a circuit court must personally engage a parent in a colloquy to ensure that a stipulation to an element of the ground for termination is knowing and voluntary. Her argument is based on the court of appeals decisions in *State v. Villareal,* 153 Wis. 2d 323, 450 N.W.2d 519 (Ct. App.

---

[6] The concurrence maintains that we are "extending the [*Steven V.*] decision by giving circuit judges the authority to decide 'paper' elements in cases that do go to a jury, *irrespective of whether there is a stipulation by or on behalf of the parent.*" Concurrence, ¶ 64 (emphasis in original). As we make clear in the text, the issue in the case is whether the circuit court is required to engage in a personal colloquy to ascertain whether a stipulation withdrawing the demand for jury trial is knowing and voluntary—*not* whether a circuit court may decide issues even where there is no stipulation. The stipulation, and the fact that it occurred in open court, are important to our holding. The concurrence's claim that the case allows circuit courts to decide paper elements that go to a jury independent of a stipulation is thus incorrect.

1989), and *State v. Hauk*, 2002 WI App 226, ¶ 4, 257 Wis. 2d 579, 652 N.W.2d 393.

¶ 43. The defendant in *State v. Villareal* was charged with first-degree murder by use of a dangerous weapon. 153 Wis. 2d at 325. At the jury instruction conference, her attorney agreed that there was no dispute that the defendant had used a dangerous weapon and stipulated that the question regarding the dangerous weapon element would not be submitted to the jury. *Id.* The court of appeals determined that use of a dangerous weapon was an element of the charged offense, that the defendant had the constitutional right to have the jury decide each element, and that waiver of that right by stipulation must be personal, knowing, and voluntary. *Id.* at 326.

¶ 44. The defendant in *Hauk* solicited murder while free on bond. 257 Wis. 2d 579, ¶ 4. The State charged her with bail jumping on the ground that she intentionally did not comply with the requirement of her bond not to commit crimes or engage in criminal activity. *Id.*, ¶ 7. Hauk's attorney agreed to stipulate to some of the elements of bail jumping. *Id.*, ¶ 8. The circuit court asked Hauk if she understood the stipulation, to which she responded "[y]es, your honor." *Id.*, ¶ 35. As a result of the stipulation, the jury did not decide whether Hauk had been charged previously with a felony or misdemeanor, whether she had been released from custody on bond, or whether she had intentionally failed to comply with terms of the bond. *Id.*, ¶ 31. Rather, the jury determined only that Hauk had committed the crime of solicitation. *Id.*

¶ 45. Citing *Villareal*, the court of appeals determined that the right to a jury trial in a criminal case "includes the right to have a jury determine *each element* of the crime." *Id.*, ¶ 32 (emphasis in original).

Because the jury did not determine three elements of the crime of bail jumping, and because Hauk's statement to the court did not indicate her willingness to waive a jury trial on those elements, the court of appeals determined that she did not waive her right to a jury trial. *Id.*, ¶ 36.

¶ 46. We are not persuaded that *Villareal* and *Hauk* support the conclusion that the circuit court erred in failing to personally engage Andrea in a colloquy to determine whether the withdrawal was knowing and voluntary. Both are distinguished from the facts presented here. To begin, the stipulation in the present case concerned a paper element. This contrasts with *Villareal* and *Hauk,* where the stipulations concerned whether a weapon was dangerous and whether criminal conduct was intentional. Further, as discussed above, there was ample evidence concerning the element introduced in the present case. There is no indication in *Villareal* and *Hauk* that there was evidence introduced regarding the stipulated elements.

■

¶ 47. We also note that TPR proceedings are civil in nature, not criminal. *M.W. v. Monroe County Dep't of Human Servs.*, 116 Wis. 2d 432, 442, 342 N.W.2d 410 (1984). Thus, the right to a jury trial in a TPR case is statutory rather than constitutional. *Steven V.,* 271 Wis. 2d 1, ¶ 4. In *Steven V.* we stated that the statutory right to a jury trial is not the equivalent of the right to a jury trial in criminal cases. *Id.*, ¶ 39 n. 5.

¶ 48. Finally, even in criminal cases, removing an element from the jury's consideration may be subject to harmless error analysis. In *State v. Harvey,* for example, the defendant was charged with the crime of possession of cocaine with intent to deliver with a penalty enhancer for committing the crime within 1000 feet of a

city park. 2002 WI 93, ¶ 2, 254 Wis. 2d 442, 647 N.W.2d 189. The circuit court took judicial notice that the park was a city park, an element of the enhancer, and instructed the jury to accept that fact as true. *Id.*, ¶ 3.

¶ 49. Because the defendant had the right to have each element decided by a jury, we determined that the instruction was constitutional error. *Id.*, ¶ 29. Following the U.S. Supreme Court's decision in *Neder v. United States*, 527 U.S. 1 (1999), we concluded that the error was subject to the harmless error rule. *Id.*, ¶ 45. Applying the rule, we reasoned that the error was harmless on the ground that the element of the enhancer was "undisputed and indisputable." *Id.*, ¶ 48.

¶ 50. Thus, even in criminal cases, removing an element from jury consideration will not alone require a new trial where the element is undisputed and indisputable, as is the case here. We are therefore not persuaded that criminal cases such as *Villareal* and *Hauk* support Andrea's contention that the circuit court's failure to personally engage her in a colloquy to ensure that her withdrawal was knowing and voluntary is an error warranting a new TPR proceeding.

¶ 51. We do not decide, however, the effect of *Villareal* and *Hauk* beyond the facts presented here. Thus, we do not address how courts should use criminal cases involving stipulations to shape decisions concerning stipulations in TPR proceedings.

¶ 52. Likewise, we do not address how future cases with different facts will deal with the broader due process arguments that Andrea advances. She argues that due process requires that a circuit court personally engage a parent in a colloquy to determine whether a stipulation to an element of the ground for termination

is knowing and voluntary. Her argument is not fully developed, but it seems to be that once a jury trial has been demanded, it is fundamentally unfair to remove an element from jury consideration by stipulation absent such a colloquy and therefore contrary to due process.

¶ 53. In *Steven V.* we determined that a jury trial in TPR cases is not required by due process and that summary judgment in TPR cases is compatible with due process. 271 Wis. 2d 1, ¶ 44. As noted, that case involved a partial summary judgment in which a parent did not receive a jury determination on the ground for termination in a TPR case. This case, however, is unlike *Steven V.* in that the jury actually made a determination on each element of the ground for termination in this case. In other words, Andrea received the process due in a TPR case.

¶ 54. Thus, neither cases involving statutory rights to a jury trial, criminal cases involving stipulations, nor due process support Andrea's argument that the circuit court erred in failing to personally engage her in a colloquy to determine that the withdrawal was knowing and voluntary. Rather, we determine that the circuit court did not err in failing to engage in a personal colloquy. Andrea agreed to the stipulation in open court. It was to a single, undisputed, paper element where another element was the focus of the controversy at issue, and there was ample uncontroverted evidence to support the stipulated element.

¶ 55. Nonetheless, while we do not require it, we urge that circuit courts in TPR proceedings consider personally engaging the parent in a colloquy explaining that a stipulation to an element withdraws that element from the jury's consideration and determining that the withdrawal of that element from the jury is

knowing and voluntary. Although no personal colloquy is required here because Andrea received a jury trial, we have not addressed whether it would be required in other contexts.

¶ 56. Termination of parental rights proceedings are "among the most severe forms of state action" that involve the " 'awesome authority of the State to destroy permanently all legal recognition.' " *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶ 20, 246 Wis. 2d 1, 629 N.W.2d 768 (quoting *M.L.B. v. S.L.J.*, 519 U.S. 102, 127–28 (1996). We have previously determined that such proceedings may "require heightened legal safeguards against erroneous decisions." *Oneida County Dep't of Soc. Servs. v. Nicole W.*, 2007 WI 30, ¶ 32, 299 Wis. 2d 637, 728 N.W.2d 652 (quoting *Evelyn C.R.*, 246 Wis. 2d 1, ¶ 21)).

V

¶ 57. In sum, we determine that Andrea received a jury trial on the element regardless of the stipulation. The stipulation in this case does not constitute a withdrawal of the demand for a jury trial on an element. Despite the fact that the parties agreed to enter a stipulation regarding the first element of the ground for termination, the jury was presented with ample evidence of the element, was instructed on the element, and answered a verdict question on that element.

¶ 58. We further determine that there would be no error here even if the circuit court rather than the jury had decided the first element. Under the circumstances of this case, the circuit court was not required to engage in a personal colloquy in order to ascertain that a withdrawal was knowing and voluntary. Andrea agreed to the stipulation in open court. The stipulation

addressed a single, undisputed, paper element where another element was the focus of the controversy at issue. Additionally, there was ample uncontroverted evidence to support the stipulated element. Accordingly, we affirm the order of the circuit court terminating the parental rights.

*By the Court.*—The order of the circuit court is affirmed.

¶ 59. DAVID T. PROSSER, J. *(concurring).* The Walworth County Department of Health and Human Services (County) filed a petition under Wis. Stat. § 48.42(1) to terminate the parental rights of Andrea L.O. (Andrea).

¶ 60. The County alleged that Andrea was an unfit parent because her son was in continuing need of protection or services. *See* Wis. Stat. § 48.415(2).

¶ 61. Andrea demanded a jury trial;[1] and she received a jury trial that lasted four days.[2] On August 3, 2006, a 12–person jury found that the County had established the statutory ground alleged in the termination of parental rights (TPR) petition.

¶ 62. In this appeal, Andrea contends that she is entitled to a new trial. She claims that a stipulation signed by her attorney, conceding one of the four elements of the ground that the County was required to prove, deprived her of a jury determination on that element, inasmuch as the court accepted the stipulation without engaging in a probing colloquy to determine whether Andrea personally, knowingly, and voluntarily waived her right to a jury trial on that element.

---

[1] *See* Wis. Stat. § 48.31(2).

[2] Andrea's jury trial included a petition against the father of the child.

¶ 63. I concur in the majority's conclusion that the termination of Andrea's parental rights should be affirmed. I disagree, however, with some of the majority's analysis. There is a sound factual basis to support the conclusion that Andrea was accorded her full right to a jury trial. However the majority does not rest its decision solely on the facts. It relies on principles in *Steven V. v. Kelley H.*, 2004 WI 47, 271 Wis. 2d 1, 678 N.W.2d 856, a case that explicitly approves the use of summary judgments in terminations of parental rights.

¶ 64. I am unable to reconcile the court's hand-wringing about whether a parent, represented by counsel, can agree to give up her right to have a jury determine an element that the County must prove at trial when the same court has vested circuit judges with the power to enter summary judgment against the parent in a termination case, thereby wiping out the parent's jury right entirely. In the majority's view, it makes no difference that the parent has demanded her right of jury trial and objected strenuously to summary judgment. In addition, I am disturbed that the court is extending the *Kelley H.* decision by giving circuit judges the authority to decide "paper" elements in cases that do go to a jury, *irrespective of whether there is a stipulation by or on behalf of the parent.* Majority op., ¶¶ 4, 41, 58.

¶ 65. My views on a parent's right to a jury trial in termination of parental rights cases were initially expressed in my *Kelley H.* dissent. *Kelley H.*, 271 Wis. 2d 1, ¶¶ 63–100 (Prosser, J., dissenting).

¶ 66. The majority in *Kelley H.* declared that any right to trial by jury in the fact-finding phase of a termination case is statutory, not constitutional. *Id.*, ¶¶ 41, 44. That conclusion is reasserted here. Majority op., ¶ 29. Yet there has never been a serious analysis

whether Article I, Section 5 of the Wisconsin Constitution affords this right in termination cases. Moreover, the way the majority analyzes the law, it would appear to make no difference whether the right is constitutional or statutory because the summary judgment provisions of Wis. Stat. § 802.08 are applied regularly in civil cases in which the right of trial by jury under the state constitution is beyond dispute.

¶ 67. Scholarship on this subject is urgently needed,[3] because *Kelley H.* and this case provide a chilling picture of future trends.

A. Wisconsin Stat. § 802.08(1) provides that "A party may . . . move for summary judgment on *any* claim . . . which is asserted by . . . the party." (Emphasis added.)

B. "The jury trial right . . . is entirely statutory, not mandated by constitutional due process, and is therefore generally subject to the provisions of the civil procedure code, including the summary judgment statute, Wis. Stat. § 802.08, unless the TPR statutes provide otherwise. *See* Wis. Stat. § 801.01(2). The TPR statutes do not provide otherwise, either explicitly or implicitly." *Kelley H.*, 271 Wis. 2d 1, ¶ 4.

C. The *Kelley H.* majority held that

> partial summary judgment in the unfitness phase of a TPR case is available where the requirements of the summary judgment statute and the applicable legal standards in Wis. Stat. §§ 48.415 and 48.31 have been met. . . .

---

[3] *See, e.g.,* Suja A. Thomas, *Why Summary Judgment is Unconstitutional*, 93 Va. L. Rev. 139 (2007) (citing numerous recent law review articles); Arthur R. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding Our Day in Court and Jury Trial Commitments?*, 78 N.Y.U. L. Rev. 982, 1074–1132 (2003).

Accordingly, partial summary judgment may be granted in the unfitness phase of a TPR case where the moving party establishes that there is no genuine issue as to any material fact regarding the asserted grounds for unfitness.

*Id.*, ¶¶ 5–6.

D. The *Kelley H.* majority gave examples:

Some statutory grounds for unfitness ... are expressly provable by official documentary evidence, such as court orders or judgments of conviction. *See* Wis. Stat. § 48.415(1m) (relinquishment, provable by court order); Wis. Stat. § 48.415(4) (continuing denial of periods of physical placement or visitation, provable by court order); Wis. Stat. § 48.415(8) (homicide or solicitation to commit homicide of parent, provable by judgment of conviction); Wis. Stat. § 48.415(9) (parenthood as a result of sexual assault, provable by judgment of conviction); Wis. Stat. § 48.415(9m) (commission of serious felony against one of the person's children, provable by judgment of conviction); Wis. Stat. § 48.415(10) (prior involuntary termination of parental rights to another child, provable by court order).

*Kelley H.*, 271 Wis. 2d 1, ¶ 37.

E. "[I]n some cases, child abuse under § 48.415(5) and incestuous parenthood under § 48.415(7) may also be proved by documentary evidence." *Kelley H.*, 271 Wis. 2d 1, ¶ 89 (Prosser, J., dissenting).

F. The *Kelley H.* court overruled *Walworth County Department of Human Services v. Elizabeth W.*, 189 Wis. 2d 432, 525 N.W.2d 384 (Ct. App. 1994), a case in which the circuit court entered summary judgment under abandonment, Wis. Stat. § 48.415(1), and continuing need of protection or services, Wis. Stat. § 48.415(2). The latter was the very ground at issue in this case.

G. The majority now gives the circuit court authority to decide at least one element of § 48.415(2) without a jury.

H. There are apparently no defenses to certain statutory grounds of unfitness. *Kelley H.*, 271 Wis. 2d 1, ¶ 25; *id.*, ¶ 56 (Abrahamson, C.J., concurring).

I. Consequently, we see evidence of summary judgments or other judicial fact-finding in place of requested jury determinations in at least 10 of the 12 grounds for termination of parental rights.

¶ 68. This court has not produced evidence that these developments were *intended* by the Wisconsin Legislature. The court has uncovered several constitutional problems with the legislature's TPR statutes, but I attribute some of these problems to this court's repeated refusal to apply the statutes. Accordingly, I concur.